**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **DENNIS J. RYDBOM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 2:20-00043** |
| | ) | |
| **SUPERINTENDENT DONNIE AMES** | ) | |
| **Mt. Olive Correctional Complex,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* (Document Nos. 2 and 2-1), filed on January 17, 2020. By Standing Order entered on January 18, 2020, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's "Motion to Dismiss and for Judgment on the Pleadings" (Document No. 21) and deny Petitioner's Cross Motion for Summary Judgment (Document No. 27).

**PROCEDURE AND FACTS**

**1.     Criminal Action No. 97-CA-16:**

On May 25, 1996, the Marietta Police Department received a report that an unidentified female's body was found in Marietta, Washington County, Ohio, later identified as Sheree Ann Petry. (Document No. 21-1, p. 51.) The Marietta Police Department began an investigation of the murder of Ms. Petry under the supervision of Richard Meek. (Id.) On May 27, 1996, officers from the Marietta Police Department, accompanied by Patrolman Phyllis from the Williamstown

Police Department, went to Ms. Petry's residence in Williamstown, Wood County, West Virginia. (Id., p. 31–32.) Several items were seized as a result of this search. (Id.)

On March 28, 1996, a search warrant was executed by officers from the Marietta Police Department and Washington County Sheriff's Department at the residence of Steve and Sherri Saines, where Petitioner was residing at the time. (Id., p. 19.) The officers "were looking for any property that could have belonged to Sheree Petry, her purse, driver's license, credit cards, keys to her vehicle, any clothing that she would have owned, hair, hair fibers, clothing fibers, soil that could have been transferred from the crime scene to [Petitioner's] residence, grass, weeds. We were looking for boots with particular shoe prints and boot prints, sole markings on them, clothing that could have been worn at the time that the crime was committed." (Id.)

Petitioner subsequently moved to Phoenix, Arizona, where he had lived before moving to Ohio, and, on November 12, 1996, Detective Brian E. McIndoo of the City of Phoenix Police Department filed an application for a search warrant of Petitioner's residence. (Document No. 21-2, p. 1–2.) The affidavit form provided that Det. McIndoo had been contacted on November 12, 1996, by Officer Greg Nohe of the Marietta Police Department and provided with an account of the investigation of Ms. Petry's murder and Petitioner's possible involvement. (Id., p. 4.) The search warrant provided for the seizure of a number of the victim's missing possessions, including her purse and its contents, her day planner, her underwear, a bathing suit, and a night gown. (Id., p. 1.)

On December 3, 1996, Petitioner was indicted for the aggravated murder of Ms. Petry in the Washington County, Ohio Court of Common Pleas. (Document No. 21-3, p. 1.) Petitioner moved to dismiss the proceedings in Ohio on the basis of a lack of territorial jurisdiction on

2

December 18, 1996. (Id., p. 2.) The Court of Common Pleas granted that motion on January 27, 1997 (Id., p. 3), finding that the investigation revealed that the victim died in Williamstown, Wood County, West Virginia, where she had lived. State v. Rydbom, No. 97-CA-16, 1998 WL 177541, at *5 (Ohio Ct. App. Apr. 14, 1998). The State of Ohio appealed, but the dismissal was affirmed by the Court of Appeals of Ohio on April 14, 1998. Id. at *6.

2.      **Criminal Action No. 97-F-87:**

On July 11, 1997, a Wood County grand jury indicted Petitioner on one count of First Degree Murder. (Document No. 13-2.) On November 4, 1997, Petitioner filed a handwritten *pro se* motion captioned "Defendant's Motion to Represent Himself." (Document No. 21-4.) In this motion, Petitioner requested that the Circuit Court dismiss his two attorneys as counsel of record in his case, but reappoint one of them to serve "as either co-counsel or standby counsel." (Id.) Petitioner cited his belief that his attorneys were not sufficiently focused on his desire to avoid trial delays as his primary motivation in seeking to proceed *pro se*. (Id.)

The Circuit Court addressed this motion at the start of a pretrial hearing the following day, November 5, 1997. The Circuit Court asked Petitioner if he was "still desiring to proceed *pro se*," to which he replied "[y]es." (Document No. 21-5, p. 1.) After the Court discussed with counsel whether Petitioner would be competent to represent himself, the Circuit Court attempted to warn Petitioner of the perils of self-representation, noting that his case was complex and involved scientific evidence. (Id., p. 2 – 4.) The Circuit Court advised Petitioner that "the problem that arises when someone proceeds *pro se*, is that they perceive things and interpret things that the Court says differently than a lawyer who is trained in the law would perceive those and interpret those statements." (Id., p. 5.) The Circuit Court cautioned Petitioner "in ninety to ninety-five

3

percent of the cases, it is to the Defendant's disadvantage to represent himself or herself" and that in representing himself, he "may make certain statements to the jury that the Court would deem testimony; and therefore, you would waive your right not to testify." (Id., p. 6.)

Upon being asked if he understood the issues self-representation presented, Petitioner again reemphasized that his priority had been his right to a speedy trial, that he was disappointed that his attorneys has not prioritized this, and that they had even potentially caused delays by filing motions unrelated to that issue. (Id., p. 7.) Petitioner then qualified his desire to proceed *pro se*, explaining:

> I agree that I need help. I don't profess to know the law, especially West Virginia law, but I know the English language, and the law is not supposed to be so overwhelmingly complex where a normal person cannot understand what's going on. That's why I've asked that Pat Radcliff still be allowed to assist me. I need help . . . but I want—I want to have the overriding authority and responsibility of what gets pursued with regard to this defense.

(Id., p. 8.) The Circuit Court then discussed the extent to which Petitioner was already entitled to strategic control of his defense, advancing the idea that Petitioner should have such control by default, while Petitioner argued that an attorney typically controls most strategic decisions. (Id., pp. 8 – 10.) The parties continued to discuss this issue, with Petitioner stressing that he needed strategic control of his defense so he would have authority to prevent his attorneys from filing any motions which would cause further trial delays. (Id., pp. 10 – 20) Petitioner continued to maintain, however, that "[i]f I don't have to waive the right to have some type of assistance in my defense, I don't want to." (Id., p. 20.)

The Circuit Court ultimately recessed so that the parties could research the extent to which a defendant should normally have strategic control of his defense. (Id., p. 28.) Upon resuming the hearing, one of Petitioner's attorneys explained that what Petitioner actually

wanted was "that he be allowed to proceed *pro se* with standby counsel . . . [t]hat is, having the powers of counsel to cross-examine, give opening statements, just as counsel would, and to make, of course, strategic decisions concerning the case." (<u>Id.</u>, p. 29.) The State opposed Petitioner's request, noting that it would create confusion. (<u>Id.</u>, p. 30.) The Circuit Court agreed, noting "I am not, at this point, ready to permit the Defendant to personally be involved in the conduct of the trial," but left open the possibility that Petitioner could be involved in a specific aspect of trial, such as questioning a witness, if he made a request ten days prior to trial. (<u>Id.</u>, pp. 31 – 32.)

The parties then discussed whether the path moving forward would be considered "hybrid" representation or standby representation. (<u>Id.</u>, pp. 33 – 36.) The Circuit Court allowed the representation situation to continue moving forward as follows:

> Okay, and my decision then is that you have—you have the ultimate decision on all those matters, matters of strategy and all those things, but that you will not be actively participating in the course of the trial unless you specifically advised the Court in advance. Is that your understanding?

(<u>Id.</u>, p. 37.) Petitioner responded "[y]es sir," and the Circuit Court asked, "[a]nd you have no problem with that?" (<u>Id.</u>) Petitioner confirmed "[f]or the time being. If I change my mind, I would make a motion at least ten days prior to trial." (<u>Id.</u>, p. 38.)

On February 6, 1998, Petitioner was convicted by jury of Murder in the First Degree of Ms. Petry. (Document No. 13-5.) The Circuit Court sentenced Petitioner in May 1998 to life imprisonment without the possibility of parole. (Document No. 13-6.)

Following trial, Petitioner moved to discharge counsel. (Document No. 21-6, p. 2.) At a hearing on December 2, 1998, Petitioner categorized the basis of his motion as an inability to agree on what issues should be the focus of the appeal, given the page limit. (<u>Id.</u>, p. 2.) Petitioner

5

stated that he wished to focus more heavily on non-constitutional evidentiary claims, while counsel preferred to focus on constitutional issues. (Id., p. 11.) Despite his statements of dissatisfaction, Petitioner acknowledged "I need his advice. I need help, or it would be highly advantageous for me to have it." (Id., p. 20.) The Circuit Court continued the hearing to give Petitioner time to reevaluate. (Id., p. 28.)

The hearing reconvened on December 4, 1998. (Document No. 21-7.) Upon the Circuit Court's inquiry, Petitioner explained that he preferred to have counsel removed and be appointed advisory counsel and that his second choice was to proceed *pro se*. (Id., pp. 2 – 3.) The Circuit Court noted that it could not find that Petitioner unequivocally requested to proceed *pro se*, given his continued statements that he needed help, and expressed that there was a timeliness issue with the request given the impending due date of the appellate petition. (Id., pp. 4 – 6.) As a solution, the Circuit stated that, although counsel would not be removed, the Court was going to appoint new counsel and order that all of the documents from Petitioner's case be transferred to Petitioner's new attorney. (Id., pp. 6 – 7.) The Circuit Court also made clear that Petitioner could complete the petition himself if he desired, and that existing counsel and the new attorney would simply assist or type up what Petitioner wrote. (Id., p. 7.)

Petitioner appealed his conviction and sentence, asserting that the Circuit Court committed reversible error when it:

1. Denied defendant's rights to a speedy trial under Section 62-2-12 and 62-3-1, West Virginia Code, and the West Virginia Constitution and the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.
2. Denied defendant's rights under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution by:
   a. Denying defendant's motion to suppress evidence as a result of the search of defendant's residence and seizure of defendant's property on May 28,

1996, in Marietta, Ohio;

    b. Denying defendant's motion to suppress evidence obtained as a result of the search of defendant's residence and seizure of defendant's property on November 12, 1996, in Phoenix, Arizona.

3. Admitted testimony concerning defendant's travel from Marietta, Ohio to Athens, Ohio.

4. Admitted a statement made by defendant to Scott Zeoli concerning "going back to his old ways of thinking."

5. Admitted the hearsay testimony of Lynn Noel and Catharine Rees reciting statements made by victim.

6. Admitted the following evidence which was irrelevant, unfairly prejudicial, and confusing to the jury contrary to Rules 401, 402 and 403, West Virginia Rules of Evidence:

    a. Writings copied from Carlos Castaneda.
    b. Defendant's college journal.
    c. The Handbook On Poisoning, a book found in the Marietta College Library.
    d. Five books on death and dying.
    e. A poem.
    f. Photographs of tombstones.
    g. "Thanks for hiding the body, man."
    h. Evidence that DNA was defendant's semen.
    i. Opinion testimony of Howard Rowsey of the reasons why he believed defendant was guilty of the murder.
    j. Photograph of phone in defendant's bedroom.
    k. Sixty (60) pieces of lingerie.
    l. Receipt from Revco drugstore showing the purchase of sleeping pills.
    m. Pillowcase containing lingerie.
    n. A CD titled "The Yearning."
    o. 1992 photography of victim in underwear.
    p. Burgundy notebook.
    q. Three photographs of the victim.
    r. A receipt from the Apex store.
    s. Key fob [of] a Mazda RX-7.
    t. Cards and letters.
    u. The victim's college I.D. cards.

    v. Algebra books belonging to victim.
    w. Receipt from Big Bear grocery.

7. Denied defendant's motion for a suppression hearing concerning reliability of the identification of lingerie seized from the defendant.

8. Failed to conduct a Rule 404(b) hearing.

9. Denied defendant's motions for judgment of acquittal and motion for new trial.

DISCOVERY RULINGS

10. Denied defendant's motion for Ohio Grand Jury Minutes [for] not ordering the prosecutor to obtain them from the State of Ohio.

11. Denied defendant's motion for Bill of Particulars.

7

12. Denied defendant's motion for early disclosure of witness statements and Grand Jury Minutes.
13. Denied defendant's motion to compel disclosure of information seized or taken by police from victim's residence and place of business.
14. Denied defendant's motion to suppress West Virginia State Police CIB report concerning breast swabs.
15. Failed to allow defendant alternate juror strikes as required by Section 62-3-3, WV Code, 1931 as amended.
16. Denied defendant's motion to cross the street from the jail to court without handcuffs.
17. Denied defendant's motion to limit the scope of cross examination of the defendant.
18. Denied defendant's motion to either sequester Sgt. Meek of the Marietta Police Department, or else require the prosecutor to call him as the first witness.
19. Overruled defendant's objection to prosecutor's questions on voir dire concerning mercy.
20. Denied defendant's motion to poll the jury for media influence.
21. Denied defendant's motion for sanctions for non-disclosure of medical evidence.
22. Denied defendant's motion for access to a law library.
23. Denied defendant's motion for change of venue.
24. Admitted the testimony of Trooper Ted Smith.
25. Admitted the testimony of Sharon Rowsey reciting victim's statements made years before her death.

### DEFENDANT'S EVIDENCE EXCLUDED OR PRECLUDED

26. Evidence that a[n] R. Lott was a viable suspect.
27. Evidence that a D. Tewksbury was a viable suspect.
28. Exhibit No. 63.
29. Denied admission of defendant's Exhibit No. 29, the first death certificate for the victim.
30. Denied admission of defendant's Exhibit Nos. 51, 52 and 53, being photographs of the Shopping Mall and Victoria's Secret Store in Arizona where he purchased items of lingerie.
31. Limited the testimony of D. Williamson to statements made by the victim pertaining only to Saturday, the day on which the crime occurred.
32. Denied defendant's motion to approve expense to employ a certain psychologist with expertise in the area of identifications.
33. Denied defendant's motion to suppress statements made by defendant to police officers during the Arizona search and seizure.

### INSTRUCTIONS

34. Lesser included offenses of Murder 2nd degree and voluntary manslaughter.
35. Venue for murder prosecution when death occurs outside of the county where the act occurs.
36. Murder by poisoning.

### PROSECUTORIAL MISCONDUCT

37. The prosecutor's characterizations of the defendant as a "malignant animal" and a "coward" were inflammatory and unduly prejudicial.

38. The prosecutor made statements asserting a person opinion or vouching the credibility of witnesses and the guilt of the defendant.
39. The prosecutor referred to and built an argument upon evidence that was not within the record or fairly destructible therefrom.
40. The prosecutor made improper references to defendant's sexual behavior.
41. The prosecutor in rebuttal unfairly exceeded the scope of defendant's closing argument.
42. The prosecutor made statements amounting to a comment on the defendant's failure to testify.
43. Denied defendant's motion to dismiss at close of prosecutor's opening statement due to failure to allege facts constituting a prima facie case of murder against the defendant.

POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR APPEAL

1. Denied defendant's right to a speedy trial by denying defendant's motion to dismiss the indictment for failure to conduct a speedy trial, by granting, over objection, the prosecutor's motion to continue the November 3, 1997 trial date, and by denying defendant's motion to dismiss the indictment for failure to conduct a speedy trial.

(Document No. 13-7, pp. 20 – 25.) By Order entered June 1, 1999, the Supreme Court of Appeals of West Virginia ("SCAWV") refused Petitioner's appeal. (Document No. 13-8.)

**3.**   **First State *Habeas* Petition (No. 99-P-9):**

On January 15, 1999, while Petitioner's direct appeal remained pending, Petitioner filed his first Petition for Writ of *Habeas Corpus* in the Circuit Court of Wood County. (Document No. 13-9.) By Order entered March 9, 1999, the Circuit Court dismissed the petition as having been prematurely filed. (Document No. 13-10.)

**4.**   **Second State *Habeas* Petition (No. 99-P-228):**

On December 13, 1999, Petitioner filed a second Petition for Writ of *Habeas Corpus* in the Circuit Court of Wood County. (Document No. 13-11.) On February 23, 2000, the Circuit Court dismissed the petition as insufficient under Rule 2(b) of the West Virginia Rules Governing Post-Conviction Habeas Proceedings. (Document No. 13-12.) Petitioner did not appeal the Circuit Court's Order.

5.    **Third State *Habeas* Petition (No. 00-P-62):**

On May 24, 2000, Petitioner, proceeding *pro se*, filed his third Petition for Writ of *Habeas Corpus* in the Circuit Court of Wood County raising similar issues as those presented on direct appeal. (Document No. 13-14.) Petitioner subsequently was appointed several attorneys to represent him and he filed multiple amended petitions. (*See* generally, Document No. 13-13.) The Circuit Court ultimately allowed Petitioner to proceed *pro se* on his claims, with the assistance of counsel and, by Order entered December 22, 2016, denied Petitioner's Third *Habeas* Petition. (Document No. 13-15.)[1]

On October 25, 2015, Petitioner appealed the Circuit Court's denial of his third State *habeas* petition and filed his "Second Petition for Appeal of Denial of Habeas Corpus Relief, After Being Denied Permission to Exceed Page Limitation, and Present Other Claims." (Document No. 13-20.) Petitioner raised the following assignments of error:

Chapter One: [R]epresentation Violations

Argument One: In response to Rydbom's motion to represent himself, and after lengthy argument over whether defense counsel or the criminal defendant himself has strategic control over the defense, Judge Reed unlawfully induced Rydbom into accepting a defense setup where Rydbom was assigned strategic control over his defense without self-representation, and where court-appointed lawyers were assigned to represent Rydbom without having strategic control over Rydbom's defense—in violation of Rydbom's 6th & 14th Amendment rights to (a) proceed *pro se*, and (b) the assistance of counsel.

Argument Two: Judge Reed wrongly denied Rydbom his state-created right, under the W.Va. Constitution, article 3, §17, to represent himself during direct appeal of his murder conviction, in violation of the Fourteenth Amendment's Due Process clause.

---

[1] On February 15, 2002, Petitioner filed a Petition for Writ of Mandamus in the SCAWV, seeking an order directing the Circuit Court of Wood County to adjudicate his then-pending third *habeas* petition. (Document No. 13-16) By Order entered July 29, 2002, the SCAWV dismissed the Petition. (Document No. 13-17) On May 3, 2007, Petitioner filed another Petition for Writ of Mandamus in the SCAWV seeking the same relief. (Document No. 13-18) By Order entered October 22, 2007, the SCAWV dismissed the petition. (Document No. 13-19)

Chapter Two: Search & Seizure

Argument One: Arizona Judge Ronald Reinstein, unlawfully authorized Phoenix Search Warrant No. 96-166 against 911 East Medlock Drive, Phoenix, AZ, in violation of the Fourth Amendment's probable cause requirement, because the supporting affidavit offered no information linking either the suspect or the items sought with the address to be searched.

Argument Two: In violation of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, Ohio police unlawfully seized Rydbom's Arizona belongings, (a) without a warrant, subpoena, or other court order,
(b) without any specifically established and well-delineated exceptions to the warrant requirement, (c) in violation of Arizona Revised Statutes § 13-3920, and
(d) in violation of Arizona Judge Reinstein's written order for Rydbom's seized belongings to remain in the custody of the Phoenix Police pending further court order.

Argument Three: In violation of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, West Virginia unlawfully seized Rydbom's Arizona and Ohio belongings, (a) without a warrant, subpoena, or other court order, and (b) without any specifically established and well-delineated exceptions to the warrant requirement.

Chapter Three: Two-State Tag Team

Argument: West Virginia prosecuted Rydbom—with the instigation, guidance, and control of Ohio—in a manner which deprived Rydbom of a fair trial, in violation of Rydbom's Compulsory Process, Confrontation, Due Process, and Equal Protection rights under the U.S. Constitution's Sixth and Fourteenth Amendments.

(Document No 13-20, pp. 2 – 3.) Respondent filed a Response on February 11, 2019.

(Document No. 13-21.) Petitioner filed his Reply on February 26, 2019. (Document No. 13-22.)

By Order entered December 20, 2019, the SCAWV adopted and incorporated "the circuit court's well-reasoned findings and conclusions, which . . . address[ed] petitioner's assignments of

11

error" and affirmed the Circuit Court's decision. (Document No. 13-2, pp. 2 – 3.) The Mandate was entered on January 22, 2020. (Document No. 13-24.) Petitioner filed a petition for certiorari, which was denied on March 30, 2020. Rydbom v. Ames, No. 17-0068, 2019 WL 6998676 (W.Va. Dec. 20, 2019), cert. denied, 140 S.Ct. 2576 (Mar. 30, 2020); (Document No. 13-25.)

  **6.**   **First Section 2254 Petition (Case No. 6:07-cv-00711):**

  On November 7, 2007, Petitioner filed a Petition for Writ of *Habeas Corpus* By a Person in State Custody under 28 U.S.C. § 2254 alleging speedy trial violations, representation issues, search and seizure issues, prosecutorial issues, hearsay issues, trial by media issues, and impartial judge issues. (See Civil Action No. 6:07-cv-00711, Document No. 2) On December 12, 2008, the Honorable Mary E. Stanley, United States Magistrate Judge, entered her Proposed Findings and Recommendation recommending that the District Court find that Petitioner failed to demonstrate inordinate delay caused by the State and dismiss the Section 2254 Petition for failure to exhaust administrative remedies. (See Civil Action No. 6:07-cv-00711, Document No. 22.) Magistrate Judge Stanley specifically found that Petitioner had exhausted his claims of speedy trial violations and search and seizure issues. (Id., p. 14.) By Orders entered February 6, 2009, and March 2, 2009,[2] the District Court dismissed Petitioner's Section 2254 Petition without prejudice for failure to exhaust state remedies. (See Civil Action No. 6:07-cv-00711, Document Nos. 24 and 25.)

  **7.**   **Instant Section 2254 Petition:**

---

[2] The Court dismissed without prejudice Petitioner's Ground 1 and 3 claims which concerned his exhausted claims for speedy trial violations and search and seizure issues because Petitioner failed to respond to the Court's Order to notify the Court within ten days if he intended to proceed on these grounds. (*See* Civil Action No. 6:07-cv-00711, Document Nos. 24, pp. 5, 25, 26.)

On January 17, 2020, Petitioner, acting *pro se*, filed the instant Section 2254 Petition[3] alleging speedy trial violations, representation violations, search and seizure issues, prosecutorial issues, self-incrimination issues, impartial judge issues, and inadequate state process issues.[4] (Document Nos. 2 and 2-1.) Specifically, Petitioner asserts the following assignments of error:

Chapter One: Speedy Trial Violations

Argument 1: The Wood County Circuit Court denied Rydbom his state-created one-term-speedy-trial right (W. Va. Code § 63-3-1), without "good cause be[ing] shown" for delay, in violation of the 14th Amendment's Due Process Clause.

Argument 2: Judge Reed and Prosecutor Conley discussed, ex parte (i.e. outside of Rydbom's presence), delaying Rydbom's trial beyond the term of indictment, in violation of Rydbom's state & federal "right to presence," and in violation of the 14th Amendment's Due Process clause.

Argument 3: The Wood County Circuit Court denied Rydbom his 6th Amendment right to a speedy trial when: (a) Rydbom was imprisoned for 419 days (344 in W. Va., and 75 in other states) before a jury was impaneled, (b) Rydbom immediately and repeatedly demanded a speedy trial, verbally and in writing, (c) Rydbom was imprisoned in W. Va. for 5 ½ months before receiving a W. Va. indictment, (d) Judge Reed privately discussed delaying trial with the prosecutor outside of Rydbom's presence, (e) trial was wrongly delayed past the

---

[3] Filed contemporaneously with his Petition, Petitioner filed an Application to Proceed *in Forma Pauperis* (Document No. 1) that indicated he had ample funds to pay the requisite filing fee of $5.00 in applying for a Writ of Habeas Corpus, prompting the undersigned to issue an Order on January 21, 2020 denying his Application and directing Petitioner to pay the $5.00 filing fee on or before February 18, 2020; the undersigned further warned Petitioner that failure to do so could result in the undersigned's recommendation that his Petition be dismissed without prejudice. (Document No. 4) By Order entered on September 4, 2020, the undersigned noted Petitioner had not filed a response, and notified Petitioner to show cause why this action should not be dismissed for failure to prosecute and to file a written response no later than October 5, 2020. (Document No. 6) Once again, Petitioner failed to file a response, and the undersigned issued a Proposed Findings and Recommendation that this action be dismissed on October 20, 2020. (Document No. 7) Finally, on October 30, 2020, Petitioner filed his "Objection to Proposed Findings and Recommendation" explaining that he had asked his prison's trustee clerk to mail his filing fee in January 2020, provided proof of payment of the filing fee, and that he never received the undersigned's September 2020 Order. (Document No. 8) Accordingly, on January 14, 2021, the undersigned entered an Order withdrawing the Proposed Findings and Recommendation and struck it from the docket. (Document No. 9)

[4] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

term of indictment, (f) another trial delay was wrongly blamed on defense motions, (g) prosecutors lied in support of delaying trial, and, (h) Rydbom was prejudiced by the trial delay.

Chapter Two: [R]epresentation Violations

Argument 1: In response to Rydbom's motion to represent himself, and after lengthy argument over whether defense counsel or the criminal defendant himself has strategic control over the defense, Judge Reed unlawfully induced Rydbom into accepting a defense setup where Rydbom was assigned strategic control over his defense without self-representation, and where court-appointed lawyers were assigned to represent Rydbom without having strategic control over Rydbom's defense – in violation of Rydbom's 6th & 14th Amendment rights to (a) proceed pro se, and (b) the assistance of counsel.

Argument 2: Judge Reed wrongly denied Rydbom his state-created right, under the W. Va. Constitution, article 3, §17, to represent himself during direct appeal of his murder conviction, in violation of the 14th Amendment's Due Process clause.

Argument 3: Court-appointed defense counsel violated Rydbom's attorney-client privilege, refused to obey Rydbom's directions, waived Rydbom's rights without his consent, and acted in opposition to Rydbom's defense related efforts, in violation of (a) Judge Reed's defense set up, and (b) Rydbom's 6th Amendment assistance-of-counsel rights.

Chapter Three: Search & Seizure

Argument 1: Arizona Judge Ronald Reinstein, unlawfully authorized Phoenix Search Warrant No. 96-166 against 911 East Medlock Drive, Phoenix, AZ, in violation of the Fourth Amendment's probable cause requirement, because the supporting affidavit offered no information linking either the suspect or the items sought with the address to be searched.

Argument 2: In violation of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, Ohio police unlawfully seized Rydbom's Arizona belongings, (a) without a warrant, subpoena, or other court order, (b) without any specifically established and well-delineated exceptions to the warrant requirement, (c) in violation of Arizona Revised Statutes §13-3920, and (d) in violation of Arizona Judge Reinstein's written order for Rydbom's seized belongings to remain in the custody of the Phoenix Police pending further court order.

Argument 3: In violation of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, West Virginia unlawfully seized Rydbom's

14

Arizona and Ohio belongings, (a) without a warrant, subpoena, or other court order, and (b) without any specifically established and well-delineated exceptions to the warrant requirement.

Chapter Four: Panty Trial[5]

Argument 1: Judge Reed ignored Rydbom's 14th Amendment Due Process claim that (i) "possession is nine-tenths of the law" and, that (ii) Rydbom was never afforded the presumption of ownership of his lingerie.

Argument 2: Judge Reed ignored Rydbom's 14th Amendment Due Process claim of being subjected to an overly prejudicial and inherently unreliable "character trial."

Argument 3: Judge Reed ignored Rydbom's 14th Amendment Due Process claim that some evidence (i.e. the panty-trial) is so unreliable and/or prejudicial that its admission violates fundamental fairness.

Chapter Five: Two-State Tag Team

Argument 1: West Virginia prosecuted Rydbom – with instigation, guidance, and control of Ohio – in a manner which deprived Rydbom of a fair trial, in violation of Rydbom's Compulsory Process, Confrontation, Due Process, and Equal Protection rights under the U.S. Constitution's Sixth, and Fourteenth Amendments.

Chapter Six: Self-Incrimination

Argument 1: Rydbom's refusal to submit to police interrogation (pre-arrest, pre-Miranda, silence) was used against Rydbom in violation of the self-incrimination clause of the U.S. Constitution's 5th Amendment.

Argument 2: Rydbom was subject to wide-open cross-examination in violation of the 5th Amendment's self-incrimination clause, and the 14th Amendment's equal-protection & due-process clauses.

Argument 3: Prosecutors made repeated comments on Rydbom's silence in violation of the 5th Amendment's self-incrimination clause.

Chapter Seven: Partisan Judge

---

[5] The Petitioner has labeled his trial the "panty-trial" and uses that description throughout his pleadings. The Court only uses that phrase when quoting the Petitioner's pleadings.

15

Argument 1: Judge Reed refused to recuse himself during state-level habeas corpus proceedings, and denied habeas corpus relief to Rydbom, as a result of Judge Reed's personal bias during the underlying criminal case and during the state-level habeas corpus proceedings now under appeal; in violation of Rydbom's 14th Amendment right to an impartial tribunal.

Chapter Eight: Inadequate State Process

Argument 1: During state-level habeas, Rydbom was not allowed to subpoena any witnesses or evidence from outside of West Virginia.

Argument 2: During final year (2016) of Rydbom's state-level habeas corpus proceedings, the Wood County Circuit Court failed to file and/or make several documents part of Case No. 00-P-69.

Argument 3: The Wood County Circuit
 Court erred by allowing so-called advisory counsel to impose their will upon Rydbom – lawyers who maintained possession, custody, & control over nine (9) bankers boxes of Rydbom's case file, & who refused to cooperate with Rydbom.

(Document No. 2, pp. 6 – 8 , 15 – 17.)

On January 15, 2021, the undersigned issued an order directing Respondent to file "a limited Response addressing the timeliness of Petitioner's Petition." (Document No. 10.) Thereafter, Respondent filed a "Limited Response to Petitioner's Section 2254 Petition" on March 1, 2021. (Document No. 13.) Respondent concluded that Petitioner's Section 2254 Petition was timely filed. (Id.) In support of Respondent's "Limited Response", Respondent attached the following Exhibits: (1) The Docket Sheet concerning the underlying criminal proceeding, Case Number 97-F-87, before Wood County Circuit Court Judge Reed (Document No. 13-1); (2) The Indictment filed against Petitioner by the Wood County Grand Jury for the offense of Murder in the First Degree in violation of W. Va. Code § 61-2-1 (Document No. 13-2); (3) A copy of Petitioner's hand-written "Petition for Writ of Prohibition" filed with the SCAWV on October 17, 1997 requesting that Judge Reed be prohibited from delaying

16

Petitioner's trial (Document No. 13-3); (4) The October 23, 1997 Order from the SCAWV refusing Petitioner's Petition for Writ of Prohibition (Document No. 13-4); (5) The Order concerning Petitioner's guilty conviction of Murder in the First Degree entered on April 3, 1998 (Document No. 13-5); (6) The Order sentencing Petitioner to prison for life and staying the execution of sentence pending Petitioner's filing an appeal in the state criminal proceeding (Document No. 13-6); (7) Petitioner's Petition for Appeal filed with the SCAWV on February 10, 1999 (Document No. 13-7); (8) The June 1, 1999 Order from the SCAWV refusing Petitioner's Petition for Appeal (Document No. 13-8); (9) Petitioner's first *pro se* Petition for Writ of *Habeas Corpus*, Case Number 99-P-9, filed on January 15, 1999 in the Circuit Court of Wood County (Document No. 13-9); (10) The Order entered on March 9, 1999 by Judge Reed dismissing without prejudice Petitioner's Petition for Writ of *Habeas Corpus* as premature (Document No. 13-10); (11) Petitioner's second *pro se* Petition for Writ of *Habeas Corpus*, Case Number 99-P-228, filed on December 13, 1999 in the Circuit Court of Wood County (Document No. 13-11); (12) The Order entered on February 23, 2000 by Judge Reed dismissing without prejudice Petitioner's Petition for Writ of *Habeas Corpus* for failing to comply with the requirements of Rule 2 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia (Document No. 13-12); (13) The Docket Sheet concerning the State *habeas corpus* proceeding, Case Number 00-P-62, as filed in the Circuit Court of Wood County (Document No. 13-13); (14) Petitioner's third *pro se* Petition for Writ of *Habeas Corpus*, Case Number 00-P-62, filed on May 24, 2000 in the Circuit Court of Wood County (Document No. 13-14); (15) The "Opinion and Order" entered on December 22, 2016 by Judge Reed dismissing Petitioner's Petition for *habeas corpus relief* (Document No. 13-15); (16) Petitioner's *pro se*

Petition for Writ of Mandamus (Case No. 30602) as filed with the SCAWV on February 15, 2002 to have the Wood County Circuit Clerk to process Petitioner's previously filed Petition for Writ of *Habeas Corpus* concerning another conviction in criminal action number 98-F-69 for "Unlawful Assault of a Correctional Officer" (Document No. 13-16); (17) The July 29, 2002 Order from the SCAWV dismissing Petitioner's Petition for Writ of Mandamus as moot (Document No. 13-17); (18) Petitioner's second *pro se* Petition for Writ of Mandamus (Case No. 33507) as filed with the SCAWV on May 3, 2007 (Document No. 13-18)[6]; (19) The October 22, 2007 Order from the SCAWV dismissing Petitioner's Petition for Writ of Mandamus (Document No. 13-19); (20) Petitioner's *pro se* "Second Petition for Appeal of Denial of *Habeas Corpus* Relief, After Being Denied Permission to Exceed Page Limitation, and Present Other Claims" as filed on October 25, 2018 with the SCAWV (Case No. 17-0068) (Document No. 13-20); (21) Respondent's brief in Case Number 17-0068 (Document No. 13-21); (22) Petitioner's *pro se* Reply brief in Case Number 17-0068 (Document No. 13-22); (23) The December 20, 2019 Memorandum Decision by the SCAWV affirming the Wood County Circuit Court's December 22, 2016 Order denying Petitioner's Petition for Writ of *Habeas Corpus* (Document No. 13-23); (24) The January 22, 2020 Mandate issued by the SCAWV affirming the Wood County Circuit Court's decision in Case Number 00-P-62 (Document No. 13-24); and (25) A copy of the denial of Petitioner's Petition for writ of certiorari to the Supreme Court of the United States (Document No. 13-25).

On March 2, 2021, the undersigned issued an Order directing Respondent to file an answer to the allegations contained in Petitioner's Petition to show cause why his request for

---

[6] Although styled as a Petition for Writ of Mandamus, this document is actually a petition requesting *habeas* relief based on Petitioner's prior petitions for *habeas* relief.

*habeas* relief should not be granted and to include copies of court and other records that would facilitate determination of the issues raised as well as include a paragraph indicating whether or not Petitioner has exhausted his state remedies. (Document No. 15.)[7] Subsequently, on June 23, 2021, Respondent moved the Court for an extension of time to file an Answer, which the Court granted on June 24, 2021, allowing Respondent to file an Answer by August 31, 2021, and further permitting Petitioner to file any Reply or Objections by November 1, 2021. (Document Nos. 18 and 19.)

On August 31, 2021, Respondent filed his "Motion to Dismiss and for Judgment on the Pleadings" as well as an accompanying "Memorandum of Law in Support of his Motion to Dismiss and for Judgment on the Pleadings." (Document Nos. 21 and 22) In further support of the Motion, Respondent asserts that he is entitled to the entry of judgment on the pleadings regarding Petitioner's Grounds One, Two, Three, and Five and dismissal of Petitioner's Grounds Four, Six, Seven, and Eight as they are procedurally defaulted.[8] (Document No. 22, p. 12.)

As Exhibits, Respondent attaches the following: (1) An "Excerpt of Proceedings" transcript dated October 8, 1997, from criminal proceedings conducted in the Circuit Court of Wood County in Case Number 97-F-87 (Document No. 21-1); (2) The Search Warrant from the City of Phoenix, Maricopa County, State of Arizona concerning Petitioner and the premises known as 911 East Medlock Drive for items stolen or embezzled, to-wit: purse and contents, including driver's license, credit cards, wallet, checks, and keys to Sheree Ann Petry; day planner or calendar 5 x 8 inches, burgundy in color belong[ing] to Sheree Ann Petry; multi-

---

[7] Because Petitioner's Section 2254 Petition exceeded 150 pages, the undersigned permitted Respondent to file an Answer by July 2, 2021.

[8] The undersigned notes Petitioner's preferred characterizations for these "grounds" as "Chapters", i.e., ground Four is "Chapter Six: self-incrimination", etc.

col[o]red daypack be[l]ongoing to Sheree Ann Petry; several pairs of women's underwear, size 6 to 7; bikini bathing suit; women's night gown; compact disks title, "the Yearning" or "The Dreamer;" documentation showing occupant(s) residing at 911 East Medlock Drive; and photographs, with a supporting Affidavit of Detective Brian McIndoo (Document No. 21-2); (3) The Washington County, Ohio, Common Pleas Court's Docket Sheet in <u>Ohio v. Dennis Rydbom</u>, Case No. 96-CR-235 (Document No. 21-3); (4) Petitioner's hand-written "Defendant's Motion to Represent Himself" filed on November 4, 1997, in the Circuit Court of Wood County in Case Number 97-F-87 (Document No. 21-4); (5) A transcript dated November 5, 1997, regarding a hearing on Petitioner's motion to proceed *pro se* in Case Number 97-F-87 (Document No. 21-5); (6) A transcript dated December 2, 1998, concerning a hearing on Petitioner's *pro se* motion to discharge his appointed counsel in Case Number 97-F-87 (Document No. 21-6); and (7) A transcript dated December 4, 1998, concerning the continuation of the hearing on Petitioner's *pro se* motion to discharge his appointed counsel in Case Number 97-F-87 (Document No. 21-7).

On September 1, 2021, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of the right to file a response to Respondent's Motion to Dismiss and for Judgment on the Pleadings. (Document No. 24.) On September 29, 2021, Petitioner filed his "First Partial Response to Respondent's Motion to Dismiss and for Judgment on the Pleadings," asserting that contrary to Respondent's argument that he did not present the substance of his claims enumerated under "Chapter Four (panty trial), Chapter Six (self-incrimination), Chapter Seven (partisan judge), and Chapter Eight (inadequate state-level process)," he did present all these claims to the SCAWV in his July 2018 Petition for Appeal of

Denial of Habeas Corpus Relief. (Document No. 26.)

On October 1, 2021, Petitioner filed his "Cross-Motion for Summary Judgment Regarding Trial Court Interference with Rydbom's Representation Rights" (Document No. 27) in addition to his "Memorandum in Support of Rydbom's Cross-Motion for Summary Judgment Regarding Trial Court Interference with Rydbom's Representation Rights" (Document No. 28). In his Memorandum, Petitioner argues as follows: (1) Petitioner's self-representation motion was unequivocal; (2) Judge Reed interfered with Petitioner's representation rights; (3) Counsel was deprived of decision-making; (4) Petitioner was deprived of decision-making authority; and (6) There was no hybrid representation. (Id.) In his Cross-Motion, Petitioner asks that numerous "true, accurate, and complete photocopies" of the following be submitted by Respondent that relate to Petitioner's claims raised in his Cross-Motion: (1) Amended Order entered April 17, 2021; (2) Motion to Discharge Appointed Counsel filed by the court clerk on November 24, 1998; (3) Defendant's Motion to Dismiss Indictment submitted on September 25, 1997; (4) Transcripts for October 10, 1997; (5) Transcripts for August 27, 1997; (6) Transcripts for January 7, 1998; (7) Transcripts for January 20, 1998; (8) Transcripts for February 2, 1998; (9) Transcripts for February 3, 1998; (10) "untitled document filed in open court 06 Feb 1998 regarding alternate juror remaining with jurors during deliberations"; (11) Transcripts for January 9, 1998; (12) Transcripts for April 16, 1998 "(sentencing)"; (13) Transcripts for January 28, 1998; (14) Transcripts for January 29, 1998; (15) Transcripts for January 30, 1998; (16) Transcripts for January 22, 1998; (17) Transcripts for January 8, 1998; (18) Transcripts for December 23, 1997; (19) Transcripts for January 7, 1998; and (20) Transcripts for February 6, 1998. (Document No. 27, pp. 2 – 3.) Petitioner explains that because his copies have been

"marked up and shrunk to eight copies per page" on both sides to reduce the volume of paperwork in his prison cell, ostensibly because they are difficult to read. (Id., p. 3.) Additionally, Petitioner asks that transcripts from an evidentiary hearing held on November 9, 2016, also be submitted as an exhibit in this matter. (Id.)

On October 6, 2021, Respondent moved for addition time to file a consolidated reply to Petitioner's "First Partial Response in Opposition" (Document No. 29), which the Court granted (Document No. 30). On October 8, 2021, Petitioner filed his "Third Response to Respondent's Motion to Dismiss and for Judgment on the Pleadings" (Document No. 31) as well as his "Declaration" verifying numerous exhibits (Document No. 32). In his "Third Response to Respondent's Motion to Dismiss and for Judgment on the Pleadings," Petitioner notes that he is addressing the "remaining portions of [his] habeas corpus petition - - Chapter One: Speedy Trial, Chapter Three: Search & Seizure, and Chapter Five: Two-State Tag Team." (Document No. 31.) Subsequently, on October 12, 2021, Petitioner filed a "Request for Leave to Respond to Respondent's 06 October 2021 Motion" indicating he had no objection to the request for additional time sought by Respondent to file a consolidated reply. (Document No. 33.) Accordingly, the Court denied Petitioner's request as moot. (Document No. 34)

On November 19, 2021, Respondent filed his "Consolidated Reply to Petitioner's First and Third Response and Response to Petitioner's Cross-Motion for Summary Judgment." (Document No. 35.) On December 2, 2021, Petitioner filed his "Motion to Compel Respondent to Furnish Relevant Documents" that pertain to his claims concerning "Representation Issues" and "Fair [Re]presentation." (Document No. 36.) On December 10, 2021, Respondent filed his "Response to Petitioner's Motion to Compel Respondent to Furnish Relevant Documents"

(Document No. 37), and attached the following exhibits thereto: (1) Petitioner's hand-written "Motion to Discharge Appointed Counsel" filed on November 24, 1998 in the Wood County Circuit Court, case number 97-F-87 (Document No. 37-1); (2) "Defendant's Motion to Dismiss Indictment" served upon the Wood County Prosecuting Attorney on or about September 25, 1997 regarding Case Number 97-F-87 by Petitioner's defense counsel (Document No. 37-2)[9]; (3) The transcript of the Pretrial Motions hearing held in the Wood County Circuit Court on October 10, 1997 in Case Number 97-F-87 (Document No. 37-3); (4) The transcript of a hearing held in the Wood County Circuit Court on August 27, 1997 regarding Petitioner's "Motion for Access to Law Library" (Document No. 37-4); (5) "Volume II" of the transcript regarding proceedings held before Wood County Circuit Court dated January 7, 1998 in Case Number 97-F-87 (Document No. 37-5); (6) "Volume V" of the transcript regarding proceedings held before Wood County Circuit Court dated January 20, 1998 in Case Number 97-F-87 (Document No. 37-6); and (7) The transcript of proceedings held in Wood County Circuit Court dated February 2, 1998 in Case Number 97-F-87 (Document No. 37-7).

On December 13, 2021, Petitioner filed his "Request for Extension of Time Due to Covid-19 Lockdown" in order to reply to Respondent's response to his cross-motion for summary judgment. (Document No. 38.) The Court granted petitioner's Request to the extent that his reply be filed no later than January 20, 2022. (Document No. 39.)

On January 19, 2022, Petitioner filed his "Consolidated Reply to the Respondent's Response to Petitioner's Motion to Compel Respondent to Furnish Relevant Documents and to

---

[9] The undersigned observes that also attached to the Motion to Dismiss is a page concerning the agenda of the 2021 Winter Prosecutors Conference from December 8 through December 10, 2019 [*sic*] (Document No. 37-2 at 13); the undersigned concludes this was included in the attachment in error, but has no bearing on the issues raised herein.

the Respondent's Response to Petitioner's Cross-Motion for Summary Judgment." (Document No. 40.) In support, Petitioner attached as an exhibit an article entitled "Identifying the Culprit: Assessing Eyewitness Identification," published by the National Academies Press, copyright 2014 by the National Academy of Sciences (Document No. 40-1).

On February 3, 2022, the Court issued an Order directing Respondent to file a surreply to Petitioner's "Consolidated Reply to the Respondent's Response to Petitioner's Motion to Compel Respondent to Furnish Relevant Documents and to the Respondent's Response to Petitioner's Cross-Motion for Summary Judgment." (Document No. 41.) Accordingly, on February 18, 2022, Respondent filed his "Surreply" arguing that pursuant to Rule 5 of the Rules Governing Section 2254 Cases, Petitioner's request that copies of his third State *habeas* brief filed on December 2, 2016 is unnecessary to facilitate determination of the issues raised herein. (Document No. 42.) In short, this Court can determine if Petitioner exhausted his available state remedies based on the documents presented to the SCAWV, not those filed with the Wood County Circuit Court. (Id.) After having located the "Amended Order" entered on April 17, 1998, that Petitioner requested earlier but misidentified, Respondent attached a copy of same as an Exhibit. (Document Nos. 42 and 42-1.) This "Amended Order" concerned proceedings in Case Number 97-F-87 and Petitioner's *pro se* motion to defend himself, to have his defense counsel remain to assist him with his defense, to gain a speedy trial, and to admit evidence found in the trash. (Document No. 42-1.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To trigger the above AEDPA deference, a State Court's decisions must be "adjudicated on the merits." Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015)(If the State court's decision does not qualify as an "adjudication on the merits," AEDPA deference is not triggered and the Court must review the issue *de novo*.). A claim is "adjudicated on the merits" if the claim "is exhausted in state court and not procedurally defaulted." Gray v. Zook, 806 F.3d 783, 798 (4th Cir. 2015)(citation omitted); also see Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)(explaining that a claim has been adjudicated upon the merits where the claim was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree"); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, United States v. Barnett, 644 F.3d 192 (4th Cir. 2011)(Exhaustion requires that a claim be "fairly presented," such that the claim was presented face-up and squarely, providing an opportunity for review by the highest state court.) It is a case-specific inquiry as to whether a claim has been "adjudicated on the merits," but a "claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record.'" Braxton, 780 F.3d at 202 (citing Winston v. Kelly (Winston I), 592 F.3d 535, 544 (4th Cir. 2010)(The record may be

25

materially incomplete if a state court "unreasonably refuses to permit further development of the facts.") The Fourth Circuit has explained that where a state court "unreasonably refuses to permit further develop of the facts," it passes up the opportunity that exhaustion ensures. <u>Winston v. Pearson (Winston II)</u>, 683 F.3d 489, 496 (4th Cir. 2012)(exhaustion requires that a state court have an opportunity to apply the law and consider all relevant evidence to petitioner's claim). Additionally, the "adjudication on the merits" requirement does not exclude "claims that were decided in state court, albeit in a summary fashion." <u>Thomas v. Taylor</u>, 170 F.3d 466, 475 (4th Cir. 1999); <u>also see</u> <u>Winton II</u>, 683 F.3d at 502(discussing <u>Harrington v. Richter</u>, 562 U.S 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)(noting that although a state court's summary denial may be presumed an "adjudication on the merits," a federal court may still find that the state court did not adjudicate a claim on the merits if the thoroughness of the state court's development of the record is challenged and there was a materially incomplete record before the state court.) When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir.), <u>cert. denied</u>, 524 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). The Court, however, must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Id.</u> at 158; <u>also see</u> <u>Harrington</u>, 562 U.S at 98 – 99, 131 S.Ct. at 770("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d)

applies when a 'claim,' not a component of one, has been adjudicated.").

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."); also see Woods v. Donald, 575 U.S. 312, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(*per curiam*)(For a state court's decision to be an unreasonable application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") Thus, a litigant must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S at 103, 131 S.Ct. at 770. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to

rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[10]

**Motion to Dismiss:**

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. See Walker v. True, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); also see Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, , 139 (4th Cir. 2009)(citing Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or exhibit.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014)(quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition

---

[10] Title 28, U.S.C. Section 2254(e) provides:

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

states a claim for relief, the court must consider "the face of the petition any attached exhibits." Wolfe, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. Walker, 589 F.3d at 139. Finally, the undersigned notes that the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in Section 2254 actions. Walker v. Kelley, 589 F.3d 127, 138-39 (4th Cir. 2009).

**Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support non-moving party's claims, summary judgment is appropriate.

<u>**ANALYSIS**</u>

1.    <u>**Grounds Four, Six, Seven, and Eight are Procedurally Barred**</u>:

In Respondent's Motion, Respondent argues that Grounds Four, Six, Seven, and Eight are procedurally barred. (Document No. 21 and Document No. 22, pp. 16 – 20.) Respondent asserts that "Petitioner's claims, as set forth in Grounds Four and Six through Eight of his Section 2254 Petition – the panty trial, self-incrimination, partisan judge, and inadequate state process – are procedurally barred because Petitioner has not presented the substance of the federal constitutional claims to the WVSCA."[11] (Document No. 22, p. 17.) Respondent explains that although Petitioner raised these four claims on direct appeal, the claims were raised in terms of violations of State law. (<u>Id.</u>) Respondent argues that the procedural bar to Petitioner's Grounds Four and Six through Eight is based on an adequate and independent state law ground. (<u>Id.</u>, pp. 18 – 19.) Specifically, Respondent states that "[t]he *Losh* waiver and the doctrine for *res judicata* are both firmly established principles of West Virginia jurisprudence and regularly followed by courts in West Virginia." (<u>Id.</u>, p. 19.) Respondent further notes that "Petitioner was represented by counsel on his third habeas petition and an omnibus hearing was conducted." (<u>Id.</u>) Thus, Respondent concludes that the *Losh* list and the doctrine of *res judicata* constitute adequate state law grounds. (<u>Id.</u>) To the extent Petitioner would seek to raise Grounds Four and Six through

---

[11] Respondent acknowledges that Petitioner exhausted the first, second, third, and fifth grounds (or "Chapters") for relief because Petitioner presented them to the SCAWV either on direct appeal or on appeal of the Circuit Court's denial of his third habeas petition. (Document No. 22, p. 17.)

Eight to the SCAWV now, Respondent argues that such would be precluded by the above adequate and independent state law grounds. (Id.) Finally, Respondent argues that Petitioner has not demonstrated any cause or prejudice or a miscarriage of justice that would excuse the procedural default. (Id., p. 20.) Accordingly, Respondent contends that Grounds Four, Six, Seven, and Eight should be dismissed as procedurally defaulted. (Id.)

In response, Petitioner filed his "First Partial Response to Respondent's Motion to Dismiss and for Judgment on the Pleadings." (Document No. 26.) Petitioner asserts that contrary to Respondent's argument that he did not present the substance of his claims enumerated under "Chapter Four (panty trial), Chapter Six (self-incrimination), Chapter Seven (partisan judge), and Chapter Eight (inadequate state-level process)," he did present all these claims to the SCAWV in his July 27, 2018 Petition for Appeal of Denial of Habeas Corpus Relief, along with his Motion to Exceed Rule 38(c) Page Limitation. (Id.) Petitioner, however, argues that because his appellate brief consisted of many different claims totaling 148 pages, and due to the SCAWV revised Rule 38(c) of appellate procedure – which reduced the page limitations for appellate briefs from fifty to forty pages – Petitioner was unfairly deprived of presenting all his claims. (Id., pp. 2 – 5.) Petitioner further asserts that the page limitation should not be used as a procedural default against him, and that he was also hindered in presenting the full spectrum of his claims by having a lawyer "forced upon him on direct appeal" who omitted several of Petitioner's claims just to remain under the page limitation. (Id., pp. 5 – 6.) Petitioner asserts that despite requesting the SCAWV to reconsider its 40-page limitation for appellate briefs, which it denied, this shows that he gave the state every opportunity to address his federal claims for relief on their merits. (Id.) Petitioner acknowledges that after the SCAWV denied his motion to exceed the page limitation, Petitioner submitted an alternative Second Petition for Appeal of Denial of

Habeas Corpus Relief that met the 40-page limit "by reluctantly removing the panty trial, self-incrimination, partisan judge, and inadequate state-level process claims from the later version." (Id.) Petitioner contends that to bar federal review of these claims by way of procedural default is a violation to the U.S. Constitution's Suspension Clause, and that non-jurisdictional procedural default doctrine should yield to Section 2254's codified exhaustion of remedies doctrine. (Id., pp. 6 – 7.) Petitioner asserts that his claims[12] are exempt from procedural default because of these constitutional violations. (Id., pp. 7 – 9.)

In Reply to Petitioner's "First Partial Response," Respondent asserts that Petitioner failed to show that his inability to stay within the page limitations set forth by the SCAWV appellate procedural rules is a valid exception to procedural default regarding his claims in Grounds Four, Six, Seven and Eight. (Document No. 35, pp. 2 – 4.) Respondent notes that this specific issue was considered and rejected by the Fourth Circuit in Weeks v. Angelone, 176 F.3d 249 (4th Cir. 1999) and Mueller v. Angelone, 181 F.3d 557 (4th Cir. 1999). (Id., p. 3.) Respondent concludes that Petitioner and his "counsel's lack of brevity in framing the issues on appeal to the SCAWV

---

[12] In support of his argument that the 40-page limit frustrated his constitutional right to plead his federal claims, Petitioner identifies several claims he was unable to reasonably present in his appellate brief: (1) Judge Reed let Trooper Ted Smith testify on behalf of another trooper; (2) Dr. Egolf testified at trial that Petitioner knew chloroform was the murder weapon before being publicly disclosed, although the jury was unaware that "this information came from [Petitioner's] private journal, illegally stolen by police, which showed that [Petitioner] learned about the chloroform from his Ohio lawyers"; (3) a "Hearsay Chapter" which identified several witnesses Judge Reed allowed to testify and give their opinions about the murder victim; (4) a "Prejudicial Publicity Chapter" that concerned prejudicial pretrial publicity as well as Petitioner being repeatedly "perp walk[ed]" in front of a jury despite Judge Reed "declared to be magically harmless after jurors claimed that cops escorting [Petitioner] in handcuffs had no effect on their verdict"; (5) Judge Reed let Ohio officials "illegally seize" Petitioner's "Arizona belongings (i.e. lingerie)" and then "give it to W. Va. officials without any warrant, or subpoena, and without any well established and specifically delineated exceptions to the warrant requirement"; (6) Judge Reed let an "Ohio/W. Va. prosecution team subject [Petitioner] to a panty trial in front of the jury" after having denied all defense pretrial motions for suppression and Rule 404(b) hearings; (7) Judge Reed let "Ohio hide behind its own separate sovereign status by depriving [Petitioner] of forensic evidence for proving [his] innocence", including depriving Petitioner from obtaining transcripts of Ohio grand jury proceedings and allowing Ohio officials sit at the West Virginia prosecuting attorney's table during the entire criminal proceedings. (Document No. 26, pp. 4, 8)

is not a valid exception to procedural default." (Id., p. 4.)

As stated above, AEDPA provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel, 631 F.Supp. at 1545. Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the

Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. Id. at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the SCAWV; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV; or (3) filing a petition for writ of *habeas* corpus under the SCAWV's original jurisdiction and receiving a dismissal with prejudice.[13] Moore v. Kirby, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); McDaniel v. Holland, 631 F.Supp. 1544, 1545-46

---

[13]   An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

(S.D.W.Va. 1986).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. <u>Rose v. Lundy</u>, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); <u>also see</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal *habeas* petition should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); <u>also see</u> <u>White v. Keller</u>, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). "State remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." <u>Ward v. Freeman</u>, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision); <u>Farmer v. Circuit Court of Md. for Balt. City.</u>, 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating

sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance.").

The record clearly reveals that Grounds Four, Six, Seven, and Eight of Petitioner's Petition were never presented to the SCAWV. Although Petitioner notes that he initially included these in his July 27, 2018 Petition for Appeal of Denial of Habeas Corpus Relief along with his Motion to Exceed Rule 38(c) Page Limitation filed with the SCAWV, Petitioner acknowledges that he excluded these grounds after the SCAWV denied his Motion to Exceed the Page Limitation. Thus, the undersigned finds that Grounds Four, Six, Seven, and Eight of Petitioner's Petition are unexhausted and there is no allegation or indication that Petitioner should be excused from the exhaustion requirement. Nevertheless, a claim that has not been presented to the state's highest court "may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000)(citing Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2081, 135 l.Ed.2d 457 (1996)); also see Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991)("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.") Although such claims are technically exhausted, the procedural default doctrine applies to those claims in a subsequent Section 2254 proceeding. See Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000)("If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts.")

The procedural default doctrine prevents a federal court from hearing a claim that has been, or would be, disposed of on "adequate and independent state-law grounds, unless the

petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." See Bostick v. Stevenson, 589 F.3d 160, 164 (4th Cir. 2009); Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999)("A state rule is adequate if it is 'firmly establish,' and regularly and consistently applied by state court, and is independent if it does not 'depend[] on a federal constitutional ruling.")(internal citations omitted). West Virginia Code § 53-4A-1(c) creates a rebuttable presumption that a state *habeas* petitioner knowingly and intelligently waives any claim that could have been, but was not, presented during the state *habeas* proceedings. Thus, the foregoing procedural bar "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal *habeas corpus* review of the default claim, unless the petitioner can demonstrate cause and prejudice of the default.'" See Hayes v. Plumley, 2016 WL 5662037, * 4 (S.D.W.Va. Sep. 30, 2016)(citing Coleman, 501 U.S. at 732, 111 S.Ct. at 2555); also see Green v. Ballard, 2015 WL 1612198, * 5 (S.D.W.Va. April 10, 2015)(recognizing that W.Va. Code § 53-4A-1(c) is "an adequate and independent state ground" for purposes of procedural default). The Fourth Circuit has recognized that "procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." Wolfe v. Johnson, 565 F.3d 140, 158, n. 27 (4th Cir. 2009)(internal citations omitted). Generally, ineffective assistance of *habeas* counsel is not considered an external factor that would excuse the failure to exhaust a claim for *habeas corpus* relief. See Maples v. Thomas, 565 U.S. 266, 280, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012)(citation omitted)("Negligence on the part of a prisoner's postconviction attorney does not qualify as

37

cause.'"). In Martinez v. Ryan, however, the Supreme Court recognized a limited exception. Martinez v. Ryan, 556 U.S. 1, 17, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012). The Supreme Court held "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. This limited exception does not extend to ineffective assistance of appellate counsel. Id., 556 U.S. at 16, 132 S.Ct. at 1320(stating that the exception "does not concern errors in . . . appeals from initial-review collateral proceedings); also see Davila v. Davis, ___ U.S. ___, 137 S.Ct. 2064, 2065, 198 L.Ed.2d 603 (2017)(decline to expand the Martinez exception to the distinct context of ineffective assistance of appellate counsel). Finally, the Fourth Circuit has stated that "[i]f any reasonable possibility exists that the state court may apply an exception to its procedural default rule, the federal court should not apply a state procedural bar to find that exhaustion is futile." Meadows v. Legursky, 904 F.2d 903, 909 (4th Cir. 1990), abrogated on other grounds by, Trest v. Cain, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997).

        In the instant case, Petitioner argues that his procedural default is excusable because Petitioner was unfairly deprived of presenting all his claims due to the SCAWV's forty page limitation. As correctly cited by Respondent, the Fourth Circuit considered and rejected such a claim in Weeks, 176 F.3d at 271-72 and Mueller, 181 F.3d 582-83. Similar to the underlying facts in the above case, Weeks filed a ninety page brief that raised forty-seven errors on his direct appeal and moved for leave to file an oversized brief. Weeks, 176 F.3d at 270. The Supreme Court of Virginia denied Week's motion and ordered him to file a brief within the established page limitation. Id. at 271. Due to the space limitation, Weeks deleted the arguments supporting

ten of his claims of federal constitutional error and the Supreme Court refused to consider the foregoing claims due to his failure to brief the errors. Id. Subsequently, Weeks raised seven of the above claims in his federal *habeas* petition and the district court determined these claims to be procedurally defaulted. Id. Weeks appealed to the Fourth Circuit arguing the following: (1) The state rule preventing consideration of claims not briefed on appeal does not constitute an adequate and independent state bar because the page limitation physically prevented him from presenting these claims; and (2) Alternatively, even if the rule is an adequate and independent state procedural rule, Weeks has shown cause and prejudice to overcome the bar because the State Supreme Court's refusal to deviate from its page limit even when it was on notice that Weeks needed more than the established page limit to present his argument was an objective factor external to the defense that impeded Weeks's ability to comply with the state procedural rule. Id. The Fourth Circuit rejected both arguments. Id. The Fourth Circuit first determined that a state procedural rule that deems arguments not briefed to be waived is an adequate and independent state bar. Id. The Fourth Circuit explained that the Virginia Supreme Court "regularly and consistently refused to consider claims not briefed or argued" on appeal. Id. The Fourth Circuit then rejected petitioner's claim that the page limitation established cause and prejudice for his default. Id. at 271-72. Specifically, the Fourth Circuit explained as follows:

> While the page limitation may have led Week's counsel to make certain strategic choices as to which arguments to include and which to omit, the page limitation is reasonable. It would be nonsensical to hold that the fifty-page limit, which is itself a reasonable and consistently applied state procedural rule, could constitute cause for failure to adhere to another state procedural rule that deems issues not briefed on direct appeal to be waived. The fifty-page limit therefore did not constitute cause for Weeks's failure to comply with the state procedural rule requiring litigants to brief issues on appeal in order to preserve them.

Id. at 272. The Fourth Circuit further noted that the page limitation "merely limited the manner

in which Weeks could present his arguments; it did not wholly prevent him from presenting them." Id. at 271. Accordingly, the Fourth Circuit determined that Weeks' claims were procedurally default.

Similar to Weeks, the Fourth Circuit determined in Mueller that the state's page limitation did not establish cause to excuse Petitioner's procedural default. Mueller, 181 F.3d at 584-85. The Fourth Circuit determined that "[t]he actual cause of default in this case is not the page limit . . ., but rather petitioner's strategic choice of which of his manifold claims to focus on." Id. at 585. The Fourth Circuit determined that the "[t]he existence of a page limitation that affords a petitioner ample opportunity to present numerous claims, forcing only some small measure of strategic choice, is not at all problematic." Id. The Fourth Circuit noted its reliance upon Jones v. Barnes, 463 U.S. 745, 752-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) wherein the Supreme Court recognized as follows:

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts – often to as little as 15 minutes – and when page limits on briefs are widely imposed . . . . A brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the jugular,'—in a verbal mound made up of strong and weak contentions.

Id.(quoting Jones, 463 at 752-53). Thus, the Fourth Circuit held that "[a]bsent a showing that the page limitation is unfairly or arbitrarily enforced, we again decline, as we recently did in *Weeks*, to hold that the mere existence of another reasonable procedural rule and the requirement that an appellant abide by it constitutes cause for a procedural default." Id.

Based upon the foregoing, the undersigned finds that Petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice that would excuse his procedural default.

Similar to the petitioner in <u>Weeks</u>, Petitioner decided to withdraw certain grounds (Grounds Four, Six, Seven, and Eight) from his appellate brief when the SCAWV denied his motion to exceed the page limitation. Although the SCAWV's denial of Petitioner's motion to exceed the page limit may have limited the manner that Petitioner could present or frame his arguments, such did not wholly prevent him from presenting his claims. As explained in <u>Weeks</u>, the page limitation merely made Petitioner and his counsel "make certain strategic choices as to which arguments to include and which to omit." <u>Weeks</u>, 176 F.3d at 272. The merely lack of brevity by Petitioner or his counsel in framing or presenting the issues on appeal to the SCAWV does not constitute a valid exception to procedural default. The undersigned, therefore, finds that Petitioner has not established cause and actual prejudice for his procedural default or does he show actual innocence. Accordingly, the undersigned respectfully recommends that Grounds Four, Six, Seven, and Eight of Petitioner's Petition are procedurally defaulted and must be dismissed.

**2.     Speedy Trial Claim:**

In his Petition, Petitioner argues that he was denied his right to a speedy trial. (Document No. 2, pp. 18 - 46.) First, Petitioner claims "[t]he Wood County Court denied [Petitioner] his state-created one-term-speedy trial right (W.Va. Code § 62-3-1), without 'good cause being shown' for delay, in violation of the 14th Amendment's Due Process clause." (<u>Id.</u>, pp. 23 – 29.) Second, Petitioner argues that "Judge Reed and Prosecutor Conley discussed, ex parte (i.e. outside of [Petitioner's] presence), delaying [Petitioner's] trial beyond the term of indictment in violation of [Petitioner's] state & federal 'right to presence,' and in violation of the 14th Amendment's Due Process Clause." (<u>Id.</u>, pp. 29 – 30.) Third, Petitioner argues that the Wood County Circuit Court denied Petitioner his Sixth Amendment right to a speedy trial based upon

the following:

> (a) [Petitioner] was imprisoned for 419 days (344 in W.Va. and 75 in other states) before a was jury was impaneled, (b) [Petitioner] immediately and repeatedly demanded a speedy trial, verbally and in writing, (c) [Petitioner] was imprisoned in W.Va. for 5 ½ months before receiving a W.Va. indictment, (d) Judge Reed privately discussed delaying trial with the prosecutor outside of [Petitioner's] presence, (e) trial was wrongly delayed past the term of indictment, (f) another trial delay was wrongly blamed on defense motions, (g) prosecutors lied in support of delaying trial, and (h) [Petitioner] was prejudiced by the trial delay.

(Id., pp. 31 – 46.)

In his Motion, Respondent argues that Petitioner has failed to demonstrate the existence of any unconstitutional delay in receiving a fair and speedy trial pursuant to the Sixth and Fourteenth Amendments. (Document No. 21 and Document No. 22, pp. 20 – 24.) First, Respondent argues that Petitioner's claim that the trial court "denied his state-created one-term speedy trial right under West Virginia Code § 62-3-1" is not cognizable and should be dismissed. (Document No. 22, p. 21.) Respondent explains that it "is not the province of federal courts to re-examine state-court determinations on state-law questions" and federal habeas review is limited to determining whether a conviction violated the Constitution, law, or treaties of the United States. (Id.) Concerning Petitioner's claim that his federal speedy trial right was violated, Respondent argues that "Petitioner has not established that the four factors, on balance, weigh in his favor and that the state courts' decision denying his speedy trial claim was contrary to, or an unreasonable application of, clearly established federal law." (Id., p. 23.) Respondent explains that the State court noted that the Magistrate Court of Wood County issued an arrest warrant on January 27, 1997, and after Petitioner's arrest on the same day, Petitioner appeared for his preliminary hearing on February 7, 1997. (Id.) The State court determined that Petitioner was indicted in mid-July 1997, which under State law was within two terms of court from the date of

his arrest. (Id.) The State court further noted that delay occurred due to Petitioner filing approximately forty-four pretrial motions, illness of the presiding judge, and the case involving a lot of scientific evidence requiring testing from the West Virginia State Police Crime Lab, which was backlogged. (Id.) Respondent argues that the delay in Petitioner's trial was not presumptively prejudicial because the delay resulted from ordinary delay. (Id.) Respondent further contends that Petitioner contributed to the delay by filing approximately forty-four pretrial motions and there is no evidence that the State attempted to intentionally delay the trial. (Id., p. 24.) Finally, Respondent notes that Petitioner has not demonstrated how he was prejudiced by any delay and Petitioner has not indicated that his defense was impaired or that he was unduly incarcerated by West Virginia officials. (Id.) Respondent concludes that the "balance of the foregoing factors does not weigh in Petitioner's favor and there is no indication that the State court's decision was contrary to or was based on an unreasonable application of federal law." (Id.)

In Response, Petitioner continues to argue that his right to a speedy trial was denied in three ways. (Document No. 31, pp. 4 – 7.) First, Petitioner complains that "the prosecution team wait[ed] half a year after imprisoning [him] without bail before bothering to indict him." (Id., p. 4.) Second, Petitioner continues to argue that the prosecution team denied him his "state-created right to be tried during the term of his indictment unless good cause is shown for delay." (Id.) Although Petitioner states that Respondent is "correct that a violation of a state-created speedy trial right does not necessarily equate into a Sixth Amendment speedy trial violation," Petitioner contends that such does "violate the 14th Amendment's Due Process Clause." (Id.) Third, Petitioner claims delay occurred regarding his pretrial motions despite Petitioner's announced willingness "to waive whatever was necessary, including all defense motions, to receive a speedy

trial." (Id., p. 5.) As to the delay caused by the trial judge's illness, Petitioner contends that such should not be excused because Petitioner "was never warned that Judge Reed's illness could be used to excuse delaying [his] trial." (Id., p. 6.) Petitioner finally argues that delay due to scientific testing should not be excused because his lawyer "never had any scientific testing done." (Id.)

In his Reply, Respondent argues that Petitioner merely reiterates his speedy trial claim as asserted in his Section 2254 Petition. (Document No. 35, p. 5.) Respondent notes that he relies on the argument asserted in his Memorandum of Law in Support of the Motion for Judgment on the Pleadings. (Id.) Respondent contends that Petitioner's claim is without merit because (1) Petitioner was indicted within two terms of court from the date of his arrest, and (2) Petitioner's trial began within one year of his arrest – despite the illness of the presiding judge, the backlog at the West Virginia State Police Crime Lab, and the trial court having to take up forty-four pretrial motions filed by Petitioner and his counsel. (Id.) Respondent notes that even though Petitioner tried to waive all pretrial motions in order to have his trial right away, the trial court concluded that many of his pretrial motions had to be heard prior to trial. (Id.) Respondent again argues that delay due to the illness of a judge, a backlog at the West Virginia State Police Crime Lab, and numerous pretrial motions are ordinary delay and not unconstitutional delay as proscribed by Doggett v. United States, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Regarding Petitioner's above *habeas* claim, the Circuit Court first summarized the procedural history involving Petitioner's underlying criminal proceedings. (Document No. 13-15, pp. 18 - 22.) Specifically, the Circuit Court stated as follows:

> On January 27, 1997, Sgt. B.D. Adkins of the West Virginia State Police initiated criminal proceedings against Petitioner in West Virginia by filing a Criminal Complaint in the Magistrate Court of Wood County West Virginia. A warrant for the arrest of Petitioner was issued on January 27, 1997. The Petitioner

44

made his initial appearance in Wood County Magistrate Court on January 30, 1997. A preliminary hearing was held on February 7, 1997, and probable cause was found and the case was bound over to Circuit Court.

Several matters were heard in Circuit Court prior to Petitioner being indicted. On January 31, 1997, a bond hearing was held and the Petitioner made an oral motion for a speedy trial. On February 20, March 19, and April 28, 1997, motions were heard regarding the employment and payment of investigators for the defense. Further, on June 11, 1997, a Motion to Dismiss was heard. The basis for this Motion was due to the Petitioner being held in jail and not being indicted quickly enough. This Motion was denied with the Court reasoning that the State had until the end of the May 1997, term of court to indict the Petitioner.

The Petitioner was ultimately indicted in July (in the middle of the May 1997 term) and was arraigned on July 28, 1997, by Senior Status Judge Arthur N. Gustke. A trial date was not set at the arraignment because the defense had filed a Motion for Change of Venue. A hearing on this Motion was set for August 4, 1997. There was discussion, at this arraignment, of setting trial for November 3, 1997. The Petitioner object to this trial date.

A hearing on the Motion for Change of Venue was held on August 4, 1997, presided over by Senior Status Judge Arthur N. Gustke. The Motion was denied with the Court finding that the defense did not make the requisite showing to justify a change in venue. Trial was set for November 3, 1997. After the change of venue issue was decided, the following pre-trial hearings were held:

- A pre-trial hearing was held on September 11, 1997. Evidence was presented on a Motion to Suppress Defendant's statement given to Detective Nohe and Captain Dutcher . . . .

- The defendant appears on arraignment day . . . on September 19, 1997 . . ..

- A pre-trial hearing was held on October 3, 1997. The Court ruled Defendant did not establish there was a need for a *Franks* hearing . . .; the Court ruled on the [following Motions: Defendant's Motion Detailing General and Specific Requests for Favorable Evidence and Impeachment Evidence; Defendant's Motion for Disclosure of Writings Used to Refresh Recollection; Defendant's Motion for Notice of Intent to Use Suppressible Evidence; Defendant's Motion for Grand Jury Testimony; Defendant's Motion for Bill of Particulars; Motion to Suppress Statements Allegedly Made by Mark Loiseau and Defendant's Supplemental Motion for Favorable Evidence and Impeachment Evidence; the State's Motion for Palm Prints; and Defendant's Motion for Jury View.

-        A pre-trial hearing was held on October 8, 1997. Testimony was presented regarding the admissibility of the search warrants conducted on May 28, 1996, . . . June 3, and November 12, 1996 . . ..

-        A pre-trial hearing was held on October 10, 1997. At this hearing the process for the selection of the jury was discussed. In addition, the State's Motion to Continue was discussed. For reasons that appear upon the record, the Court granted the Motion to Continue but continued the trial to a date within the same term of Court – January 6, 1998.

-        A pre-trial hearing was held on November 5, 1997. At this hearing the Court heard arguments on the Defendant's Motion to Represent Himself; granted a defense Motion to Approve Expenses, and, heard further testimony on the Ohio and Arizona search warrants and the trash issue from May 28, 1996, search.

-        A pre-trial hearing was held on November 6, 1997. At this hearing the Court addressed the Defendant's Motion to Secure Attendance of Non-Resident Witnesses; heard further evidence on the Ohio and Arizona search warrants; heard further evidence on the trash issue regarding the May 28, 1996, search; the Court ruled that there was no need for a suppression hearing regarding the identification of lingerie; heard evidence regarding the Defendant's statements during the execution of the Arizona search warrant; addressed the Defendant's Motion in Limine filed October 6, 1997; and addressed the Defendant's Motion to Suppress and Motion in Limine filed on September 24, 1997.

-        A pre-trial hearing was held on November 7, 1997. At that hearing additional evidence was presented on the Ohio search warrants, . . . the admissibility of the defendant's statement during the Arizona search; and, testimony was heard concerning the body wire worn by Patrick Kish.

-        On November 26, 1997, the Court ruled on the admissibility of the Athens County, Ohio search.

-        A pre-trial hearing was held on December 2, 1997. At that hearing the Court addressed the [following:] Defendant's Motion to Suppress and Motions in Limine filed on September 25, 1997; the Defendant's Motion in Limine regarding the issue of flight; and for a pretrial or *in camera* hearing on issue

of flight; the Defendant's Motion to Compel Garments; the Defendant's Motion to Compel the Release of the Victim's Business Records; the Defendant's Motion in Limine concerning The Handbook of Poisoning; the issue of Order the Washington County, Ohio prosecuting attorney to release the Washington County, Ohio grand jury transcripts; the Court heard the audio portions of the body wire of June 3, 1996, [and] . . . testimony on the flight issue; . addressed Defendant's Motion to Dismiss on the basis of denial of speedy trial.

-       A pre-trial hearing was held on December 3, 1997. At this hearing the Court heard testimony on the issue of flight; heard testimony on the defendant's statement to Scott Zeoli; and the issue of profiling was discussed.

-       A pre-trial proceeding was held on December 23, 1997. At this hearing, the Court addressed the Defendant's Motion to Suppress the West Virginia State Police CIB report; the Motion to Dismiss based on speedy trial; the Defendant's Motion for reconsideration of identification of lingerie; the Amended Motion for the Ohio Grand Jury Transcript; the Defendant's Motion that the State not be permitted to use Defendant's aliases; the Court addressed that McIndoo's telephone deposition had not be completed for the Arizona statement issue; and there was discussion of the jury voir dire process.

The defense filed approximately 44 pre-trial motions. Some of the motions were perfunctory, but others dealt with issues of vital importance, such as the statements of the defendant that occurred in Arizona and Ohio, searches of the defendant's home that occurred in Arizona and Ohio, and many evidentiary issues. Below is a list of the motions filed by the defense prior to trial of this mater, along with an approximately date of the filing of the motion:

                                                    ***[14]

(Id.) After summarizing the foregoing, the Circuit Court determined that Petitioner's speedy trial rights were not violated. (Id., p. 27.) Specifically, the Circuit Court explained, in pertinent part, as follows:

From a review of these cases, the following reasons can be filtered out to justify not trying a case in the term of indictment: congested trial docket; an

---

[14] The list of the Motions has been omitted by the undersigned. Such, however, may be reviewed at Document No. 13-15, pp. 21 – 22.

indictment returned in the middle of a term; pretrial proceedings; dealing with issues of a search; dealing with issues of a statement; and illness of a judge; and forensic testing.

All of these, some to a greater degree than others, were involved in this case. First, this case was presented to a Grand Jury during the middle of the May 1997 term. So this indictment was returned in the middle of the terms.

Second, as set out above, approximately 44 pre-trial motions were filed by defense. At a pre-trial hearing on October 10, 1997, the Petitioner was prepared to waive all his pre-trial motions so that he could pursue his speedy trial right. However, by October 10, 1997, the case had already been set into the next term of court – the Petitioner was indicted in the May 1997 term and the pre-trial hearing on October 10, 1997, was in the September 1997 term. Regardless, the Petitioner had this trial in the September 1997 term of court - - the trial began on January 6, 1998, which is still in the September 1997 term of court. Another problem with Petitioner attempting to waive all his pre-trial motions on October 10, 1997, was that some of the issues that needed to be addressed dealt with searches and statements – issues that needed to be addressed prior to the trial. Further complicating these search and statement issues were that the searches and statements occurred in foreign jurisdictions – Arizona and Ohio.

Third, in mid-June 1997, the Supreme Court of Appeals of West Virginia began entering Orders assigning Senior Status Judge Arthur N. Gustke to preside over cases on this Court's docket due to the illness of the presiding judge. *See* Appendix B. Senior Status Judge Gustke was assigned to cover cases until September 30, 1997. *See* Appendix C. As a result, Senior Status Judge Gustke presided over Petitioner's initial appearance in Circuit Court and the hearing on the Motion for Change of Venue. At either the initial appearance or the hearing on the Change of Venue Motion, counsel inquired as to whether Judge Gustke wished to preside over the case. Judge Gustke replied No!. (See transcript of August 4, 1997, hearing) So, there was also illness of the presiding judge to whom this case was assigned.

Finally, there was scientific evidence involved in this case. Several pre-trial motions related to this scientific evidence and obtaining the material back from the State Police lab so that the defense could also perform their own scientific tests.

(Id., pp. 26 - 27.) The SCAWV adopted and incorporated the Circuit Court's findings and conclusions in affirming the Circuit Court's decision. (Document No. 13-23.)

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. It is well established that a speedy trial is a fundamental right guaranteed to a criminal

defendant by the Sixth Amendment and imposed on the States through the Due Process Clause of the Fourteenth Amendment. <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Protection under the Sixth Amendment is "triggered by 'arrest, indictment, or other official accusation.'" <u>Doggett</u>, 505 U.S. at 655, 112 S.Ct. 2686. The Supreme Court has set forth four factors that should be balanced in determining whether a defendant has been denied his Sixth Amendment right to a speedy trial. <u>See</u> <u>Barker v. Wingo</u>, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors are as follows: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. <u>Id.</u> at 530, 92 S.Ct. at 2191-92; <u>also see</u> <u>VanHoose v. Seifert</u>, 2012 WL 1111480, at * 3 (S.D.W.Va. March 30, 2012), <u>aff'd</u>, 474 Fed.Appx. 987 (4th Cir. 2012)("The four-prong Barker analysis is a "balancing test," which "necessarily compels courts to approach speedy trial cases on an ad hoc basis," and "no one prong is dispositive.") "In addition to being a factor, the first inquiry is also a threshold requirement, because 'simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.'" <u>United States v. Woolfolk</u>, 399 F.3d 590 (4th Cir. 2005)(citing <u>Doggett</u>, 505 U.S. at 651-52, 112 S.Ct. at 2686). "The Supreme Court, however, has never offered guidance on what the phrase 'postaccusation delay' encompasses." <u>Woolfolk</u>, 399 F.3d at 598. In discussing the length of time that is generally considered "presumptively prejudicial," the Fourth Circuit noted that the Supreme Court had found eight months to be "substantial" and one year to be the "point at which courts deem the delay unreasonable enough to trigger the <i>Barker</i> inquiry." <u>Id.</u> at 597-98(quoting <u>Doggett</u>, 505 U.S. at 652 n. 1, 112 S.Ct. 2686.)

Initially, the undersigned finds that Petitioner's claim that the trial court violated "his state-created one-term speedy trial right under W.Va. Code § 62-3-1" is not cognizable on federal *habeas* review because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. Petitioner does not allege a violation federal law or a federal constitutional right by asserting the alleged violation of the West Virginia Speedy Trial statute.[15]

Next, the undersigned must consider whether the SCAWV's determination that the trial court did not violate Petitioner's Sixth Amendment right to a speedy trial was contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. The undersigned finds that Petitioner cannot established a speedy trial violation. A Criminal Complaint was filed against Petitioner in West Virginia on January 27, 1997, and his trial began on January 6, 1998. The approximate eleven month delay between the filing of the Criminal Complaint and Petitioner's trial does not meet the threshold showing to trigger the speedy trial analysis. See Aldrige v. Ballard, 2009 WL 772933, * 3 (S.D.W.Va. March 18, 2009)(J. Chambers)(finding Petitioner did not suffer an abridgment to her Sixth Amendment right to a speedy trial where "the delay from charge to trial was just over one year, and barely over the minimum time period when a speedy trial analysis is even necessary"). Even considering the four Barker factors, such do not weigh in Petitioner's favor. Petitioner was more

---

[15] The undersigned further notes that the relief granted for a violation of the two-term rule is "release from commitment to jail and not a ban to prosecution of the underlying offense." *State ex rel. King v. Ielapi*, 2012 WL 2979072, * 20 (W.Va. March 9, 2012); *also see State v. White*, 2014 WL 4347130, * 2 (W.Va. Aug. 29, 2014)("[A] violation of the two-term rule does not prohibit further prosecution or incarceration on a subsequent indictment, conviction, and sentence.")

to blame for the delay than the government. There were numerous motions filed on behalf of Petitioner resulting in the delays. Although Petitioner complains that he was not indicted until July 11, 1997, multiple hearings were held between Petitioner's arrest and indictment. A bond hearing was held on January 31, 1997, motion hearings were held regarding the employment and payment of investigators for Petitioner's defense on February 20, March 19, and April 28, 1997, and a hearing on Petitioner's motion to dismiss was held on June 11, 1997. Petitioner was indicted by the Wood County Grand Jury on July 11, 1997, and arraigned on July 28, 1997. Following the denial of Petitioner's Motion for Change of Venue on August 4, 1997, the Circuit Court set trial for three months later on November 3, 1997. Although Petitioner's trial date was ultimately continued until January 6, 1998, the Circuit Court held at least eleven hearings between August 4, 1997 and December 23, 1997, considering approximately 44 pretrial motions filed by Petitioner. Importantly, seven of the pretrial motions' hearings occurred after the granting of the continuance on October 10, 1997. These hearings involved numerous pretrial motions filed on behalf of Petitioner involving issues critical to Petitioner's trial, such as admissibility of Petitioner's statements given in Arizona and Ohio, searches of Petitioner's home that occurred in Arizona and Ohio, and many other evidentiary issues. Additionally, the record reveals that some delay resulted from a congested trial docket due to illness of Judge Reed and a backlog of the West Virginia State Police Crime Lab regarding forensic testing of evidence. Accordingly, the undersigned finds there was plausible reason for the delay. Next, there is no indication that Petitioner's preparation for trial was significantly impaired by the alleged delay. Further, there is no evidence that State deliberately delayed trial or caused delay to gain a tactical advantage. The undersigned, therefore, finds that the SCAWV's determination that the trial court did not violate Petitioner's Sixth Amendment right to a speedy trial was not contrary to or an

unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. See United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998)(no Sixth Amendment violation resulting from a 35-month delay between indictment and arraignment). Accordingly, the undersigned respectfully recommends that the District Court dismiss Petitioner's Sixth Amendment claim.

**3.    Representation Violations:**

In his Petition, Petitioner argues that he was denied his right to self-representation at trial and on appeal. (Document No. 2, pp. 47 – 77.) Specifically, Petitioner argues as follows:

a.    In response to [Petitioner's] motion to represent himself, and after lengthy argument over whether defense counsel or the criminal defendant himself has strategic control over the defense, Judge Reed unlawfully induced [Petitioner] into accepting a defense setup where [Petitioner] was assigned strategic control over this defense without self-representation, and where court-appointed lawyers were assigned to represent [Petitioner] without having strategic control over [Petitioner's] defense - - in violation [Petitioner's] 6th and 14th Amendment rights to (a) proceed pro se, and (b) the assistance of counsel.

b.    Judge Reed wrongly denied [Petitioner] his state-created right under the W.Va. Constitution, Article 3, § 17, to represent himself during direct appeal of his murder conviction, in violation of the 14th Amendment's Due Process clause.

c.    Court-appointed defense counsel violated [Petitioner's] attorney-client privilege, refused to obey [Petitioner's] directions, waived [Petitioner's] rights without his consent, and acted in opposition to [Petitioner's] defense related efforts, in violation of (a) Judge Reed's defense set up, and (b) [Petitioner's] 6th Amendment assistance-of-counsel rights.

(Id.)

In his Motion, Respondent first argues that "Petitioner's right to proceed *pro se* at trial and on appeal was not violated because he did not make an unequivocal request to represent himself." (Document No. 22, pp. 25 – 26.) Specifically, Respondent contends that "Petitioner has

failed to demonstrate that the Circuit Court's decision was erroneous because the record reveals that his invocation of the right was not unequivocal because he desired for at least one of his attorneys to continue to assist him in some capacity." (Id., p. 25.) Respondent states that although Petitioner attempted to invoke his right to self-representation, the trial court determined such to be unequivocal because Petitioner stated that he needed the assistance of counsel. (Id., p. 26.) Respondent explains that a defendant that seeks additional control over their case without relinquishing the assistance of counsel are seeking hybrid representation and have "not unequivocally asserted their right to self-representation." (Id., p. 25.) Respondent concludes that he is entitled to judgment on the pleadings on the above ground because the State Court's decision that Petitioner "did not unequivocally waive his right to counsel" is neither contrary to nor constitutes an unreasonable applicable of federal law. (Id., p. 26.)

Second, Respondent contends that Petitioner's right to counsel was not violated by his hybrid representation. (Id., pp. 26 – 27.) Respondent argues that Petitioner is incorrect in his claim that a hybrid representation is unconstitutional because a criminal defendant must have either full representation or proceed *pro se*. (Id., p. 26.) Although Respondent acknowledges that there is no Sixth Amendment right to hybrid counsel, hybrid representations are generally within a trial court's discretion to impose. (Id.) Respondent further argues that "Petitioner has not demonstrated that hybrid representation in which the defendant is given power to override strategic decisions is precluded." (Id., pp. 26 – 27.) Therefore, Respondent argues that he is entitled to judgment on the pleadings because the State Court's decision on the above claim is neither contrary to nor constitutes an unreasonable application of federal law.

In Petitioner's Memorandum in Support of his Motion  for Summary Judgment, Petitioner asserts that his request to proceed *pro se* in the underlying criminal proceeding was

unequivocal; he concedes that he needed legal help, but he "made it repeatedly and explicitly clear that he did not want lawyers managing his case." (Document No. 28, p. 2.) Petitioner asserts that Judge Reed interfered with Petitioner's right to self-representation by misleading him on the fundamental rights to assistance to counsel and to self-representation. (Id., pp. 3 – 4.) As examples of where his counsel were "[d]eprived of [d]ecision-making" ability, Petitioner states that "[d]uring jury selection, defense counsel opposed, but capitulated to [Petitioner's] wish to not request striking certain jurors for cause;" "[Petitioner] waived, against counsel's advice, the right to let the jury consider giving mercy . . . in case the jury found [Petitioner] guilty of 1º murder;" "[d]efense counsel yielded to [Petitioner's] refusal of cautionary instructions;" "[d]efense counsel let [Petitioner] personally choose to have alternate jurors present during deliberations;" and "[d]efense counsel yielded to [Petitioner] allowing Judith Dunn's incriminating statements attributed to [Petitioner], even though the statements could have been excluded because they were admittedly never disclosed to the defense pursuant to discovery requests." (Id., pp. 4 – 5.) Petitioner also claims that his own defense counsel interfered with his ability to make decisions as to how to manage his defense, for instance, by refusing to obtain the assistance of an eyewitness identification expert and by refusing to type and submit Petitioner's offer of proof regarding same, and by requesting, against Petitioner's wishes, a "blanket admission of lingerie if any lingerie was to be admitted over objection." (Id., p. 5.) Petitioner asserts that defense counsel disobeyed Petitioner's directions to object to "improper statements made by prosecutors during closing arguments," for example: vouching for the honesty of her witnesses; commenting on Petitioner's refusal to speak to the police; and asserting personal knowledge of Petitioner's guilt. (Id., pp. 5 – 6.) Petitioner states that defense counsel refused to obtain pretrial discovery and/or share same with Petitioner, including prosecution exhibits that

were admitted into evidence; defense counsel also "without [Petitioner's] input or informed consent" waived his right to peremptory strike alternate jurors, one of whom became a regular jury who returned a guilty verdict. (Id., p. 6.) In short, Petitioner was "talked into" an unworkable means of representation where defense counsel was unable to defend him in the manner counsel deemed best, and where Petitioner had only intermittent control over his case. (Id., pp. 6 – 7.) Petitioner asserts there was no "hybrid representation" during the underlying criminal proceedings, and that Judge Reed failed to conduct a Faretta hearing[16] to determine if Petitioner knowingly, intelligently and voluntarily waived his right to counsel or gave a limited waiver allowing for hybrid representation. (Id., p. 8.) Petitioner further asserts that Judge Reed improperly refused him to proceed in his direct appeal *pro se*. (Id.)

In Petitioner's "Third Response to Respondent's Motion to Dismiss and for Judgment on the Pleadings," Petitioner argues that Respondent did not address Petitioner's "IAC-type complaints" that were asserted in his "Chapter Two: Representation Violations, Argument 3." (Document No. 31, pp. 7 - 8.) Petitioner acknowledges that this claim was not included in his appellate brief filed with the SCAWV after the Court denied Petitioner's motion to exceed the page limitation. (Id.) Petitioner, however, states that he "tried" to raise the claims in his July 27, 2018 Petition for Appeal of Denial of Habeas Corpus Relief, along with his Motion to Exceed Rule 38(c) Page Limitation. (Id.)

In his Reply, Respondent first argues that Petitioner merely reiterates the claims as asserted in Ground Two of his Section 2254 Petition. (Document No. 35, p. 6.) Respondent also contends that to the extent Petitioner has asserted claims related to "Chapter Two:

---

[16] The purpose of a *Faretta* hearing is to determine whether the defendant that is seeking to proceed *pro se*, understands the consequences of waiving his Sixth Amendment right to counsel and is relinquishing that right knowingly and intelligently. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Representation Violations" those can be attributed to an ineffective assistance of counsel claim, but Petitioner fails to demonstrate any of the choices he made over counsel's advice resulted in any prejudice to him. (Id., p. 6.) Respondent notes that "[t]o the extent Petitioner has raised an ineffective assistance claim based on his ability to override counsel's strategic guidance, such claim is without merit because Petitioner has not demonstrated that any of the choices he made over counsel's advice resulted in any prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984)." (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court made the following findings of facts and conclusions of law: (Document No. 13-15, pp. 27 - 30.)

> On November 5, 1997, a pre-trial hearing was held in this matter. One of the issues discussed at that hearing was the Petitioner's Motion to Represent Himself. This was a Motion the Petitioner, filed, *pro se*, on November 4, 1997. At the beginning of the discussion on this Motion, the Petitioner stated that he wanted to represent himself. After some discussion concerning some of the disadvantages to representing himself, the Petitioner agreed that there were disadvantages and admitted that he needed help. This is also when the Petitioner stated that his main concern was to control what was most important in the case.
>
> At this point in the hearing the discussion turned to how much control over the case a client had in the traditional attorney-client relationship. Again, during this discussion, the Petitioner agreed he needed help with the building and presentation of his defense and indicated that he wanted over-riding authority on what gets pursued. During this discussion, the Petitioner went from wanting to represent himself, to having his current counsel act as stand by counsel, to having his current counsel act as co-counsel. But again, all through this discussion, the Petitioner stated that he wanted strategic control of the defense.
>
> The Petitioner stated, not less than 5 times, that if he had strategic control over the case, that he did not want to proceed *pro se*. In addition to the statements about having strategic control, the Petitioner admitted at least 4 times that he knew he needed help with the case.
>
> The reason this ebb and flow of Petitioner's thoughts on this topic are highlighted is to show that the Petitioner did not unequivocally waive his right to counsel.
>
> What the Court attempted to do as a resolution was to fashion a remedy that gave the Petitioner the relief he seemed to want most (strategic control of the case) while allowing his attorneys to actively represent him. The Petitioner was in agreement with this arrangement and did not raise the issue of representing

himself again, even though he was given the ability to, even without the consent of his attorneys.

During this hearing, the Court was of the opinion that a criminal defendant had the authority to maintain strategic control over the case in a traditional attorney-client relationship. There was some disagreement between the attorneys as to whether this was in fact correct under the controlling case law. But, whether the Court was correct or not on this issue is of no moment. If the Court was correct and the Petitioner already had this authority, then the Court's decision merely affirmed on the record the role of the various players for the defense. If the Court was incorrect and the Petitioner did not have strategic control of the case before this hearing, then the Court gave the Petitioner what he wanted most - - strategic control over the defense. Further, if the Court was incorrect and the Petitioner did not have strategic control over the case before this hearing, then this decision would have fallen into one of hybrid situations that defense counsel was arguing the Court had the authority to implement under the controlling case law.

Another aspect of the ruling on November 5, 1997, that the Petitioner does not discuss is the fact that the ruling left open for further discussion the various roles of the defense team. In other words, the Court specifically ruled that if, as the defense develops its case and as the case proceeded toward trial, the Petitioner wanted to have more involvement in the case, such as being involved in *voir dire*, or giving the opening statement or closing argument or questioning a particular witness, that the Petitioner could bring this issue back before the Court. If the Petitioner brought this issue back before the Court, then the Court would have to decide whether to allow the Petitioner to be involved to the extent that the Petitioner desired. The Court also specifically advised the Petitioner that he could file such a request on this own, without going through defense counsel. (See, pages 30-38 of the November 5, 1997, hearing transcript).

Neither defense counsel nor the Petitioner ever asked to change the roles of the defense team. In other words, even though the Court left open for further discussion whether the roles of the defense team could change, there was never a request by either the Petitioner's counsel or the Petitioner to make such a change. The Petitioner cannot complain about the relationship between himself and this counsel when he agreed to the relationship, had the ability to change the relationship, and yet he failed to bring the issue back before the Court.

To be effective, a criminal defendant must timely and unequivocally waive his right to counsel. *State v. Sheppard*, 172 W.Va. 656, 310 S.Ed.2d 173 (1983). The request in this case was timely. However, this Court found at the time of the hearing and again finds in this habeas corpus proceeding, that the waiver was not unequivocal. One of the reasons the court in *Sheppard* found the request to proceed *pro se* was equivocal was because it appeared that the request was made as a result of the trial court's denial of Sheppard's request for the appointment of other counsel. Similarly, in this case, it is abundantly clear, from both the written Motion and the statements by the Petitioner at the hearing, that the Petitioner was upset with his counsel for not pursuing this speedy trial rights effectively enough, at least in his mind.

The Petitioner next goes on for some 3 ½ pages under the heading "Disloyal Attorneys." These allegations appear to fall under the heading of ineffective assistance of counsel. As discussed earlier, the Petitioner's claims of ineffective assistance of counsel under this heading must fail because the Petitioner did not introduce any evidence on these topics during the evidentiary hearing on November 9, 2016. Without such a record, it is impossible to FIND that counsel was ineffective.

For the reasons set forth above, the Court FINDS and CONCLUDES that the Petitioner has not established any basis for relief in habeas corpus on this claim.

(Document No. 13-15, pp. 27 - 30.) The SCAWV adopted and incorporated the Circuit Court's findings and conclusions in affirming the Circuit Court's decision. (Document No. 13-23.)

The Sixth Amendment guarantees every criminal defendant the right to assistant of counsel. See U.S. Const. Amend. VI. Additionally, the Sixth Amendment guarantees a criminal defendant the right to waive assistance of counsel and represent himself at trial. Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)(a criminal defendant that chooses to proceed *pro se* may be allowed to do so only if he knowingly and intelligently waives the benefits of counsel). A criminal defendant "may waive the right to counsel and proceed pro se at trial only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." United Stated v. Bernard, 708 F.3d 583, *588 (2013)(citing United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir. 2000)(collecting cases)). The requirement that the request be unequivocal serves two purposes: (1) It ensures that the defendant does not inadvertently waive his right to counsel; and (2) It prevents the defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation. Horton v. Bishop, 2015 WL 1256506, * 5 (D.Md. March 17, 2015)(citing Meeks v Craven, 482 F.2d 465, 466-68 (9th Cir. 1973)). "If a defendant equivocates, he is presumed to have requested the assistance of counsel." Id.(citing Adams v. Carroll, 875 F.2d 1441, 1444 (9th Cir. 1989)). "The determination of whether there has

been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). "[T]he *Faretta* right to self-representation is not absolute, and 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." Frazier-El, 204 F.3d at559(quoting Martinez v. Court of Appeal of Cal., 528 U.S. 152, 120 S.Ct. 684, 691, 145 L.Ed.2d 597 (2000)). A criminal defendant that chooses to proceed *pro se* has no right to standby counsel and courts have "broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense." United States v. Beckton, 740 F.3d 303, 307 (4th Cir. 2014)(citations omitted). There, however, is no constitutional right to hybrid representation.[17] See McKaskle v. Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984)("*Faretta* does not require a trial judge to permit hybrid representation . . .."); United States v. Singleton, 107 F.3d 1091, 1100 (4th Cir. 1997)(recognizing that the Constitution does not mandate hybrid representation); Myers v. Johnson, 76 F.3d 1330, 1335 (5th Cir. 1996)(finding "no constitutional right to hybrid representation"); and United States v. McKinzie, 2009 WL 151079 (S.D.W.Va. Jan. 20, 2009)(J. Johnston)("criminal defendant does not have an absolute right to both self-representation and the assistance of counsel"). Finally, a criminal defendant does not have a constitutional right to represent himself on direct appeal. Martinez, 528 U.S. at 153, 120 S.Ct. at 686.

Initially, the undersigned finds that Petitioner's claim that the trial court violated "his

---

[17]    Hybrid representation occurs when a criminal defendant is representing himself and being represented by counsel.

state-created right under the W.Va. Constitution, Article 3, § 17, to represent himself" is not cognizable on federal *habeas* review because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68, 112 S.Ct. at 475. As stated above, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. Petitioner does not allege a violation federal law or a federal constitutional right by asserting the alleged violation of the West Virginia Constitution.[18]

Next, the undersigned must consider whether the State court's determination that the trial court did not violate Petitioner's Sixth Amendment right to self-representation was contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. The undersigned finds that Petitioner cannot established a denial of self-representation. The record clearly establishes that Petitioner did not make an unequivocal request to represent himself. During the November 5, 1997 hearing, the trial court warned Petitioner of the dangers and disadvantages of proceeding *pro se*. (Document No. 21-5, p. 4 – 7.) Following the foregoing, Petitioner stated that, "I agree I need help." (Id., p. 8.) Petitioner further indicated that his desire to *pro se* was because he wanted "control" of his case and the ability to make strategic decisions. (Id., pp. 7 – 8.) In explaining his desire for "control," Petitioner indicated that his attorneys were well aware of Petitioner's desire for a "speedy trial" but they were "late" in filing his pretrial motions. (Id.) Petitioner acknowledged that the pretrial motions were timely filed pursuant to the trial court's Orders, but the pretrial motions were "late" under Petitioner's

---

[18] The undersigned further notes that the relief granted for a violation of the two-term rule is "release from commitment to jail and not a ban to prosecution of the underlying offense." *State ex rel. King v. Ielapi*, 2012 WL 2979072, * 20 (W.Va. March 9, 2012); *also see State v. White*, 2014 WL 4347130, * 2 (W.Va. Aug. 29, 2014)("[A] violation of the two-term rule does not prohibit further prosecution or incarceration on a subsequent indictment, conviction, and sentence.")

standards. (Id.) Despite Petitioner's insistence that he wanted "control" and the ability to make strategic decisions, Petitioner continuously acknowledged that he needed "help" from an attorney or co-counsel. (Id., pp. 8, 18, 19, 28.) Further, Petitioner clearly stated that he did not want to proceed *pro se* if he had the right to make strategic decisions. (Id., pp. 20 and 28.) The trial court determined that representation should continue as follows:

> Okay, my decision then is that you have – you have ultimate decision on all those matters, matters of strategy and all those things, but that you will not be actively participating in the course of the trial unless you specifically advise the Court in advance. Is that your understanding?

(Id., p. 37.) Petitioner responded in the affirmative. (Id.) The trial court further inquired if Petitioner had a "problem" with the foregoing and Petitioner stated that such was agreeable and if he changed his mind, he "would make a motion at least ten days prior to trial." (Id., p. 38.) Accordingly, the undersigned cannot find that Petitioner's invocation of the right to self-representation was unequivocal. The record reveals that Petitioner continuously indicated his desire for at least one of his attorneys to continue to assist him in some capacity. A criminal defendant that seeks additional control of their case without relinquishing the assistance of counsel are categorized as requesting hybrid representation. A criminal defendant that requests hybrid representation does not unequivocally assert their right to self-representation. See United States v. Marquez, 667 Fed.Appx. 496, 498 (5th Cir. 2016)(holding that a criminal defendant "has not 'clearly and unequivocally' asserted his desire to proceed pro se, given that he requests that his current counsel – counsel whom he has repeatedly attempted to have replaced – remain on the case as standby counsel"); Gill v. Mecusker, 633 F.3d 1272, 1295-96 (11th Cir. 2011)(finding no unequivocal invocation of the right to self-representation where defendant "vacillated between self-representation and being represented by counsel" and defendant "made

clear to the trial court that he did not wish to proceed without counsel"); United States v. Mendez-Sanchez, 563 F.3d 935, 947 (9th Cir. 2009)("[A] defendant who wishes to represent himself or herself and also asks that he or she be afforded standby counsel has not unequivocally asserted his or her right to self-representation and waived his or her right to counsel."); Islam v. Miller, 166 F.3d 1200 (2nd Cir. 1998)(finding that no unequivocal expression of the right to self-representation where the criminal defendant requested to participate alongside counsel, which fell into the category of hybrid representation); United States v. Floyd, 81 F.3d 1517, 1527-28 (10th Cir. 1996)(finding that a criminal defendant's acceptance of a "quasi-hybrid representation" precluded a finding that the defendant unequivocally asserted his right to self-representation); United States v. Oakey, 853 F.2d 551, 552-54 (7th Cir. 1988)(defendant's request for self-representation with co-counsel found equivocal, given there was no constitutional right to such 'hybrid' representation); United States v. Bennett, 539 F.2d 45, 49-51 (10th Cir. 1976)(defendant who unquestionably vacillated between representation by counsel and self-representation until six days before trial forfeited right to self-representation); Therefore, the undersigned finds that the State Court's decision that Petitioner did not unequivocally waive his right to counsel is not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

Next, the undersigned finds that the hybrid representation situation created by the Circuit Court giving Petitioner strategic control over his defense did not result in a violation of Petitioner's constitutional rights. Petitioner argues that hybrid representation is inherently unconstitutional because a criminal defendant must have either full representation or proceed *pro se*. In support, Petitioner cites Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) and Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Citing Taylor,

Petitioner argues that the attorney must maintain strategic control in a representation. The issue in <u>Taylor</u>, however, was not one of hybrid representation but one of whether a defendant is bound by an attorney's malfeasance. Citing <u>Jones</u>, Petitioner argues that a criminal defendant has only limited authority to make fundamental decisions. Although Petitioner is correct that the Court in <u>Jones</u> determined that a criminal defendant has only limited authority to make fundamental decisions, the <u>Jones</u> Court did not hold that a criminal defendant is confined to *only* the fundamental choices noted in the decision. Furthermore, it is well recognized that even though a criminal defendant has no constitutional right to hybrid representation, hybrid representation is permissible. <u>See McKaskle</u>, 465 U.S. at 183, 104 S.Ct. at 953; <u>Singleton</u>, 107 F.3d at 1100 (4th Cir. 1997); <u>Myers</u>, 76 F.3d at 1335; <u>also see</u> <u>United States v. Jenkins</u>, 540 Fed.Appx. 893 (10th Cir. 2014)("[W]e recognize permission for hybrid representation 'as being discretionary with the trial court.'"); <u>Clark v. Perez</u>, 510 F.3d 382, 395 (2nd Cir. 2008), <u>cert. denied</u>, 555 U.S. 823, 129 S.Ct. 130, 172 L.Ed.2d 37 (2008)("The decision to grant or deny hybrid representation lies solely within the discretion of the trial court"); <u>United States v. Davis</u>, 269 F.3d 514, 519 (5th Cir. 2001)(The Supreme Court has "strongly implied" that hybrid representation is permissible); <u>United States v. Einfelt</u>, 138 F.3d 373, 378 (8th Cir. 1998)("There is no constitutional right to hybrid representation; it is available at the district court's discretion."), <u>cert. denied</u>, 525 U.S. 851, 119 S.Ct. 126, 142 L.Ed.2d 102 (1998); <u>United States v. Nivica</u>, 887 F.2d 1110 (1st Cir. 1989), <u>cert. denied</u>, 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990)(finding that even though there is no constitutional right to hybrid representation, "[t]hat is not to say that hybrid representation is foreclosed; rather, it is to be employed sparingly and, as a rule, is available only in the district court's discretion"); <u>United States v. Mosely</u>, 810 F.2d 93, 98 (6th Cir. 1987), <u>cert. denied</u>, 484 U.S. 841, 108 S.Ct. 129, 98 L.Ed.2d 87

(1987)(finding "hybrid representation is a matter committed to the sound discretion of the trial court"); United States v. LaChance, 817 F.2d 1491, 1498 (11th Cir. 1987), cert. denied, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987)("[T]he decision to permit a defendant to proceed in a hybrid fashion rests in the sound discretion of the trial court."); United States v. Hill, 526 F.2d 1019, 1024 (10th Cir. 1975), cert. denied, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976)(finding that even though there is no constitutional right to hybrid representation, a trial judge is not foreclosed from allowing hybrid representation in appropriate cases). Thus, Petitioner has failed to demonstrate that hybrid representation created by the trial court wherein Petitioner was allowed to strategic decision was a violation of Petitioner's constitutional rights. See Gill, supra, 633 F.3d at 1296(finding no self-representation violation based upon defendant's assertion that the trial court forced him to accept hybrid counsel where the hybrid arrangement was agreed to by defendant and it assured defendant the opportunity to participate in strategy decisions and provided defendant with appointed counsel that defendant indicated was essential). Accordingly, the undersigned respectfully recommends that the District Court dismiss Petitioner's above *habeas* claim.

Finally, the undersigned considers Petitioner's claim that "court-appointed defense counsel violated [Petitioner's] attorney-client privilege, refused to obey [Petitioner's] directions, waived [Petitioner's] rights without his consent, and acted in opposition to [Petitioner's] defense related efforts, in violation of (a) Judge Reed's defense set up, and (b) [Petitioner's] 6th Amendment assistance-of-counsel rights." (Document No. 2, pp. 62 – 77.) The undersigned initially notes that even though Petitioner may have asserted the above issue in *habeas* proceedings before the Circuit Court, this issue was never presented to the SCAWV on direct appeal or in the appeal of the Circuit Court's Order denying *habeas* relief. (Document Nos. 13-7

and 13-20.) For the same reasons explained in Section 1, the above issue is procedurally defaulted.

Notwithstanding the foregoing, the undersigned will further consider whether the State court's decision on the above issue is contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

After identifying the Strickland standard and the equivalent West Virginia authority as the applicable precedent, the Circuit Court addressed the above issue, in pertinent part, as

follows:

> The Petitioner next goes on for some 3 ½ pages under the heading "Disloyal Attorneys." These allegations appear to fall under the heading of ineffective assistance of counsel. As discussed earlier, the Petitioner's claims of ineffective assistance of counsel under this heading must fail because the Petitioner did not introduce any evidence on these topics during the evidentiary hearing on November 9, 2016. Without such a record, it is impossible to FIND that counsel was ineffective.

(Document No. 13-15, pp. 27 – 30.) Although Petitioner contends that he presented arguments concerning these claims of ineffective assistance of counsel during the November 9, 2016 hearing, the record is void of any *evidence* that he introduced on these topics. The Circuit Court explained that "Petitioner bears the burden of establishing that trial counsel was ineffective, and overcoming the presumption that trial counsel was effective in performing his or her role." (Document No. 13-15, p. 15.) The Circuit Court, however, noted that "[e]ven though both trial counsel were called as witnesses at the habeas corpus evidentiary hearing, neither one of them testified as to why they took certain actions or what factors they considered in making certain decisions" and "Petitioner did not testify." (Id.) The undersigned cannot find that the State court's decision was contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts, due to the lack of evidence of any prejudice to Petitioner involving his allegations of ineffective assistance of counsel. Accordingly, the undersigned respectfully recommends that the District Court dismiss Petitioner's above *habeas* claim.

**4.      Fourth Amendment Violations:**

In his Petition, Petitioner argues that his Fourth Amendment rights were violated concerning searches and seizure occurring in Arizona, Ohio, and West Virginia. (Document No.

2, pp. 77 – 89.) Specifically, Petitioner argues as follows:

a. Arizona Judge Ronald Reinstein unlawfully authorized Phoenix Search Warrant No. 96-166 against 911 East Medlock Drive, Phoenix, AZ, in violation of the Fourth Amendment's probable cause requirement, because the supporting affidavit offered no information linking either the suspect or the items sought with the address to be searched.

b. In violation of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, Ohio police unlawfully seized [Petitioner's] Arizona belongings, (a) without a warrant, subpoena, or other court order, (b) without any specifically established and well-delineated exceptions to the warrant requirement, (c) in violation of Arizona Revised Statutes § 13-3920, and (d) in violation of Arizona Judge Reinstein's written order for [Petitioner's] seized belongings to remain in the custody of the Phoenix Police pending further court order.

c. In violation of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, West Virginia unlawfully seized [Petitioner's] Arizona and Ohio belongings, (a) without a warrant, subpoena, or other court order, and (b) without any specifically established and well-delineated exceptions to the warrant requirement.

(Id.)

In his Motion, Respondent argues that "Petitioner was afforded the opportunity to raise his Fourth Amendment claims in the State courts, and therefore, Petitioner is not entitled to Federal *habeas* review of these claims. (Document No. 22, pp. 27 – 28.) Citing Stone v. Powell, Respondent argues that Petitioner's Fourth Amendment claims are not cognizable because they were fully considered on the merits by the State court. (Id.) Respondent states that "Petitioner properly filed his suppression motions, which were thoroughly considered at a hearing by the Circuit Court and ultimately denied." (Id.) Since Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claims, Respondent argues that Petitioner is not entitled to Federal *habeas* review of those claims and Respondent is entitled to judgment. (Id.)

In Petitioner's "Third Response to Respondent's Motion to Dismiss and for Judgment on

the Pleadings," Petitioner fails to address Respondent's above argument. (Document No. 31, p. 3.) Petitioner, however, challenges exhibits filed by Respondent regarding the out-of-state search and seizure warrants. (Id., pp. 3, 8 – 11.) Petitioner argues that he was "deprived of access to a true, accurate, and complete copy of the 12 Nov. 1996 Arizona search warrant and its accompanying documents." (Id., p. 3.) Petitioner states that this included "photos produced during the search, and a legitimate signature page of the affiant - - assuming one exists." (Id.) Petitioner complains that his copy "did not have an affiant's signature." (Id., pp. 3, 8 -11.) Second, Petitioner claims there was no nexus linking the items sought to 911 East Medlock Drive. (Id., pp. 12 – 13.) Finally, Petitioner argues that Ohio's seizure of Petitioner's Arizona belonging was unlawful. (Id., pp. 13 – 14.) Specifically, Petitioner complains that "Ohio Co. Sgt. Meek seized [Petitioner's] Arizona belonging from the Phoenix Police without a warrant, without a subpoena, without any other court order, and without any specifically established and well-delineated exceptions to the warrant requirement." (Id.)

In his Reply, Respondent first argues that Petitioner merely reiterates the claims as asserted in Ground Three of his Section 2254 Petition without adding anything substantive. (Document No. 35, p. 5.) Respondent also contends that Petitioner merely "addresses ground three by challenging each of Respondent's exhibits regarding the out-of-state search and seizure warrants." (Id., p. 6.) Respondent states that "[e]ach exhibit submitted by Respondent in connection to this ground for relief was obtained from the Circuit Court as the exhibits were presented to the trial court in connection with various pretrial motions and pretrial hearings on the motions." (Id.) Finally, Respondent notes that Petitioner does not respond to the substance of Respondent's Motion for Judgment on the Pleadings as to the above ground. (Id.)

In Stone v. Powell, the United States Supreme Court determined that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at this trial." Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). The Fourth Circuit has further recognized that "Stone v. Powell, supra, marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court." Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982). Once a district court has determined that a state habeas petitioner had the opportunity for a full and fair consideration of the Fourth Amendment claim in state court and that opportunity was not impaired, the district court should not inquire any farther into the merits of a petitioner's Fourth Amendment claim. Id. at 304-05(citing Doleman v. Muncy, 579 F.2d 1258 (4th Cir. 1978). The petitioner carries both burdens of pleading and proving the facts and the reasons why did not receive an opportunity for full and fair litigation. Doleman, 579 F.2d at 1258.

The record demonstrates that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the State proceedings, and the Petitioner has not asserted otherwise. Specifically, the record reveals that Petitioner properly filed motions to suppress, which were thoroughly considered but ultimately denied by the Circuit Court following hearings on the motions. (Document No. 21-1 and 21-5.) Pretrial hearings addressing the searches were held on October 3, 1997, October 8, 1997, November 5, 1997, November 6, 1997, November 7, 1997, and November 26, 1997. (Document No. 13-15, pp. 19 – 20.) Petitioner asserted his Fourth Amendment claims on his direct appeal, but the SCAWV refused Petitioner's petition for appeal.

(Document Nos. 13-7 and 13-8.) Petitioner's Fourth Amendment claims were also fully considered and rejected on the merits by the State *habeas* courts. (Document Nos. 13-15 and 13-23.) Thus, the undersigned finds that <u>Stone v. Powell</u> applies in the above case because Petitioner had the opportunity for a full and fair consideration of his Fourth Amendment claims in State court and that opportunity was not impaired. Based upon the foregoing, the undersigned respectfully recommends that the District Court deny Petitioner's Fourth Amendment claims based upon <u>Stone v. Powell</u> and grant judgment to Respondent. <u>See</u> <u>Moss v. Ballard</u>, 2011 4017873, * 9 (S.D.W.Va. Sept. 8, 2011)(J. Goodwin)(denying petitioner's Fourth Amendment claim based on *Stone v. Powell* where petitioner "had a full and fair opportunity to challenge the probable cause determination prior to his trial and to litigate his Fourth Amendment claim")

**5.      <u>Two-State Tag Team Claim</u>:**

In his Petition, Petitioner argues that his constitutional rights were violated because he was subjected to a "two-state tag team." (Document No. 2-1, pp. 4 – 18.) Specifically, Petitioner argues as follows:

> Judge Reed erred in denying habeas corpus relief because West Virginia prosecuted [Petitioner] – with the instigation, guidance, and control of Ohio – in a manner which deprived [Petitioner] of a fair trial, in violation of [Petitioner's] Compulsory Process, Confrontation, Due Process, and Equal Protection rights under the U.S. Constitution's Sixth and Fourteenth Amendments.

(<u>Id.</u>) Citing <u>Bartkus v. Illinois</u>, 359 U.S. 121, 122-24 (1954), Petitioner argues that "West Virginia's prosecution was a sham done as a front for Ohio and/or that the two states abused their sovereignties, teaming up as one sovereign to prosecute [Petitioner] and invoking their separate sovereignties to deprive [Petitioner] of material evidence." (<u>Id.</u>) Petitioner argues that West Virginia was the only state with jurisdiction over the victim's murder, but "Ohio was the puppet master pulling West Virginia's strings." (<u>Id.</u>) Petitioner complains that "Ohio was

allowed to withhold and supposedly destroy forensic evidence, and withhold the prior grand jury testimony of prosecution witnesses." (Id.) Petitioner contends that "West Virginia failed or refused its lawful right and obligation to make a diligent, good faith, effort to obtain all evidence relevant to Sheree Petry's murder that was in the possession, custody, and control of Ohio officials." (Id.)

In his Motion, Respondent argues that the State Court's decision regarding the above *habeas* claim "was neither contrary to nor constituted an unreasonable application of federal law." (Document No. 22, pp. 29 – 30.) Respondent further explains that "Petitioner's claim fails because there is no federal constitutional right barring the cooperation by the Ohio law enforcement and prosecutors with the West Virginia prosecution." (Id., p. 30.) Respondent argues that the Bartkus exception does not bar cooperation between prosecuting sovereignties. (Id., pp. 29 – 30.) Therefore, Respondent argues that he is entitled to judgment on the pleadings regarding the above *habeas* claim. (Id., p. 30.)

In Petitioner's "Third Response to Respondent's Motion to Dismiss and for Judgment on the Pleadings," Petitioner complains that he does not have a document labeled "ECF 2-1" as cited by Respondents. (Document No. 31, pp. 14 - 16.) Second, Petitioner appears to acknowledge that "cooperation between two sovereigns is permissible." (Id.) Petitioner, however, continues to complain he was denied forensic evidence and grand jury testimony from Ohio. (Id.) Petitioner argues the foregoing should have been provided to Petitioner under the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings." (Id.) Petitioner states that "the Uniform Act allows for the issuance of subpoenas duces tecum for 'evidence.'" (Id.)

In his Reply, Respondent first argues that Petitioner's Section 2254 Petition was filed in

two parts due to the length of the document. (Document No. 35, p. 7.) Thus, Respondent notes that the second part of his Petition was filed under document "ECF 2-1." (Id.) Finally, Respondent argues that Petitioner merely reiterates portions of his claims as asserted in his Section 2254 Petition without adding anything substantive. (Id.) Therefore, "Respondent rests on his Motion for Judgment on the Pleadings and urges this Court to grant such Motion." (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court made the following findings of facts and conclusions of law: (Document No. 13-15, pp. 36 - 39.)

> In this Chapter, the Petitioner makes various complaints about the West Virginia prosecution in this case. As discussed in the section dealing with speedy trial issue, the prosecution of the Petitioner began in Ohio. This is not unreasonable since the body of Sheree Petry was found in Marietta, Ohio. The investigation travelled to Arizona (mainly because the Petitioner fled to Arizona after the murder of Sheree Petry), but the investigation was always centered in Ohio. After the Petitioner was indicted in Ohio, the Petitioner filed a motion before the Washington County, Ohio, Court of Common Pleas challenging the jurisdiction of Ohio to prosecute him.
>
> The record in this case does not contain a copy of this motion, but it is undisputed that it was a defense motion that challenged the jurisdiction of the State of Ohio to prosecute the Petitioner. The Washington County, Court of Common Pleas in Ohio agreed with the Petitioner's contentions and dismissed the charge in Ohio.
>
> It appears that the indictment in Ohio was dismissed on or about January 27, 1997. Other than a brief search of Sheree Petry's living quarters in Williamstown, Wood County, West Virginia, at or near the time her body being discovered in Ohio (May of 1996), there is no evidence in this proceeding of any other involvement of West Virginia law enforcement authorities up until the case was dismissed in Washington County, Ohio. In fact, during this search, Ohio law enforcement actually conducted the search with West Virginia law enforcement merely accompanying them.
>
> Of course, once the Washington County, Ohio, charges were dismissed the authorities in West Virginia were forced to take up the case. There is absolutely no evidence of any prior involvement by West Virginia prosecutors or even West Virginia law enforcement prior to January 27, 1997.
>
> The Petitioner also complains about the evidence in this case being transferred from the Ohio authorities to the West Virginia authorities without an exception to the warrant requirement being used. The warrant requirement would apply if a government agency (Ohio or Arizona law enforcement) seized personal property from a private citizen (the Petitioner). Here the Petitioner complains because one government agency (Ohio law enforcement) gave the Petitioner's

property to another government agency (West Virginia law enforcement). The Petitioner cites no authority for his position that once law enforcement has lawful possession of a private citizens personal property that they are prevented from turning that property over to another law enforcement agency – even in another state.

Nevertheless, there were safeguards in place that allowed the Petitioner to test the legality of the property seized from him. The Petitioner was given the opportunity to challenge the legality of the initial taking of his property - - both in Ohio and Arizona. Further, the Petitioner was able to challenge the admissibility of the property seized based upon the establishment of a proper chain of custody. To exclude this evidence based upon either the Arizona authorities or the Ohio authorities not complying with some state statute or case law would violate the spirit and purpose of the exclusionary rule.

The Petitioner next complains because the West Virginia authorities did not obtain a copy of the Washington County, Ohio, grand jury testimony of the witnesses who testified before the Grand Jury in Washington County, Ohio. The Wood County Prosecuting Attorney's Office asked for these transcripts and their request was denied by the Ohio authorities. The Petitioner filed a *pro se* Motion in Washington County, Ohio, seeking production of these grand jury transcripts and this Motion was denied. The Washington County Public Defender Corporation also sought production of these transcripts and their request was denied. It was apparent that the Washington County Grand Jury transcripts were not going to be released.

The defense team cited no law at the trial level that would have allowed the Circuit Court Judge in Wood County, West Virginia to order the authorities in Washington County, Ohio to turn over these grand jury transcripts. The Petitioner has not cited any authority in this habeas corpus proceeding that would give a Circuit Court Judge in Wood County, West Virginia the jurisdiction to order the authorities in Washington County, Ohio to turn over the grand jury transcripts.

The Petitioner also raises the issue of ineffective assistance of counsel under this heading. The issue of ineffective assistance of counsel has been addressed, *supra*. For the reasons previously set out, this Court would FIND that Petitioner has failed to establish that his trial counsel were ineffective.

The Court would FIND and CONCLUDE that the Petitioner has failed to establish any grounds for relief in habeas corpus under this heading.

(Document No. 13-15, pp. 36 - 39.) The SCAWV adopted and incorporated the Circuit Court's

findings and conclusions in affirming the Circuit Court's decision. (Document No. 13-23.)

The United States Supreme Court has recognized that "under the dual-sovereignty

doctrine, the Double Jeopardy Clause allows successive prosecutions by separate sovereigns."

Gamble v. United States, ___ U.S. ___, 139 S.Ct. 1960, 204 L.Ed.2d 322 (2019). Under the dual-

sovereignty doctrine, two offenses are not the same offense for double jeopardy purposes if "prosecuted by different sovereigns." Heath v. Alabama, 474 U.S. 82, 92, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). The Supreme Court has explained as follows:

> The dual-sovereignty doctrine is not an exception to the double jeopardy right but follows from the Fifth Amendment's text. The Double Jeopardy Clause protects individuals from being "twice put in jeopardy" for the same offence." As originally understood, an "offence" is defined by law, and each law is defined by a sovereign. Thus, where there are two sovereigns, there are two laws and two "offences."

Gamble, ___ U.S. at ___, 139 S.Ct. at 1962. In Bartkus v. Illinois, however, the Supreme Court arguably identified an exception to the dual sovereignty doctrine where the prior "state prosecution was a sham and cover for a federal prosecution, and thereby in essential fact another federal prosecution." Bartkus v. Illinois, 359 U.S. 121, 123-24, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). A subsequent prosecution may be a sham if (1) "the sovereign had 'little or no independent volition in their proceedings;'" or (2) "the sovereign's decision-making was dominated or controlled by the other sovereign or if the prosecution did not vindicate the sovereign's interests." United States v. X.D., 442 Fed.Appx. 832 (4th Cir. 2011); also see United States v. Byars, 762 F.Supp. 1235, 1241 (E.D.Va. April 24, 1991)("Excessive collusion, in which the federal government or a state government simply employs the other sovereign as a cover or 'tool,' directly affronts the notion of dual sovereignty.")(citations omitted). In Bartkus, the Supreme Court rejected defendant's argument that his Illinois prosecution was barred by double jeopardy after defendant had been acquitted of a substantially similar charge based on the same facts in federal court. Bartkus, 359 U.S. at 123-24, 79 S.Ct. at 678. The Supreme Court reasoned that despite federal cooperation with Illinois prosecutors, the record did not establish that "the State of Illinois in bringing its prosecution was merely a tool of the federal authorities,

who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal." Id. Therefore, "[c]ooperation between sovereigns does not establish that one sovereign has ceded its prosecutorial discretion to the other sovereign." X.D., 442 Fed.Appx. at 833; also see Bartkus, 359 U.S. at 123-24, 79 S.Ct. at 678(finding cooperation between two sovereigns "is the conventional practice been two sets of prosecutors throughout the country."); United States v. Bernhardt, 831 F.2d 181, 182 (9th Cir. 1987)("It is clear that the Bartkus exception does not bar cooperation between prosecuting sovereignties."). "Similarly, cooperation between law enforcement agencies is commendable, and, 'without more, such efforts will not furnish a legally adequate basis for invoking the Bartkus exception to the dual sovereign rule.'" Id.(citation omitted). Accordingly, the Bartkus exception "to the dual sovereign doctrine is narrow one." X.D., 442 Fed.Appx. at 832.

The undersigned cannot find that the State court's determination that on the above issue was contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. The record is void of any evidence that West Virginia impermissibly colluded with Ohio. Once the Ohio charges were dismissed for lack of jurisdiction on January 27, 1997, West Virginia prosecutors charged Petitioner because West Virginia had proper jurisdiction. There is no indication that West Virginia's decision to prosecute Petitioner was not of its own volition or that Ohio controlled the decision-making process of the West Virginia prosecutor. See X.D., 442 Fed.Appx. at 833; also see United States v. Angleton, 221 F.Supp.2d 696, 715 (S.D.Tx.)(collecting cases)("The Supreme Court in Bartkus, and all circuit courts to consider Bartkus sham prosecution claims, have held that even significant cooperation between the two sovereign does not provide a basis for applying the Bartkus exception.") Although Petitioner complains that the West Virginia prosecution team was assisted by Ohio

officials (Ohio prosecutor and Ohio Police Officer) throughout the case, such is insufficient to establish that Ohio controlled the decision-making process. See Angleton, 221 F.Supp.2d at 715(collecting cases)("Every circuit to consider the issue has held that the cross-designation of a state law enforcement agent or district attorney as a federal official to assist or even to conduct a federal prosecution does not bring a case within the *Bartkus* exception to the dual sovereignty doctrine.") Although Petitioner challenges the admissibility of seized evidence and the State's alleged failure to produce grand jury testimony from Ohio and certain alleged forensic evidence, Petitioner had the opportunity to challenge such during his underlying State proceedings. The underlying record merely reveals cooperation by the Ohio prosecutors and law enforcement with the West Virginia prosecution team, which is insufficient to establish a basis for invoking the *Bartkus* exception to the dual sovereign rule. The undersigned cannot find that the State court's decision was contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that the District Court dismiss Petitioner's above *habeas* claim.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's "Motion to Dismiss and for Judgment on the Pleadings" (Document No. 21), **DENY** Petitioner's Cross Motion for Summary Judgment (Document No. 27), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: August 17, 2022.

Omar J. Aboulhosn
United States Magistrate Judge